Argued March 27, reversed and remanded August 2, reconsideration denied August 30, 1978, petition for review denied January 9, 1979

In the Matter of Anderson, Nancy, A Child.
STATE ex rel MULTNOMAH COUNTY
JUVENILE DEPARTMENT, *Respondent,*

*v.*

ANDERSON, *Appellant.*

(No. 53,046, CA 8915)

582 P2d 29

Steven M. Rose, Portland, argued the cause for appellant. With him on the brief was Rose and Senders, Portland.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent; Herbert A. Trubo, Portland, argued the cause for minor child. With them on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, Lee, Richardson and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

Appellant's parental rights in his daughter, born December 3, 1972, were terminated under ORS 419.523(2).[1]

We review de novo on the record (ORS 419.561(4), 19.125(3)), giving due regard to the findings of the trial court, which had an opportunity to observe the witnesses. *State ex rel Juv. Dept. v. Maves,* 33 Or App 411, 576 P2d 826 (1978).

The petition upon which the order in question was based was filed April 11, 1977. It was the second petition filed against appellant seeking termination. The first appears to have been filed in March, 1976. In November of that year a hearing was held on an amended version of that petition, which alleged that appellant's rights should be terminated under ORS 419.523(2) and (3).[2] In connection with that petition a

---

[1] ORS 419.523(2):

"(2) The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable in the forseeable future due to conduct or conditions not likely to change. In determining such conduct and conditions, the court shall consider but is not limited to the following:

"(a) Emotional illness, mental illness or mental deficiency of the parent of such duration as to render it impossible to care for the child for extended periods of time.

"(b) Conduct toward any child of an abusive, cruel or sexual nature.

"(c) Addictive use of intoxicating liquors or narcotic or dangerous drugs.

"(d) Physical neglect of the child.

"(e) Lack of effort of the parent to adjust his circumstances, conduct, or conditions to make the return of the child possible or failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected."

[2] ORS 419.523(3):

"(3) The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the

motion was filed to compel a psychiatric examination of appellant. Prior to the hearing the motion was denied.

The evidence produced at the November, 1976, hearing showed that appellant had never seen his daughter, though she was at that time almost four years old. Appellant and the child's mother had been married in South Dakota in May, 1972. Before the child was born, appellant's wife left him, giving no indication of where she was going. It was not until November, 1974, that appellant first learned that he had a daughter. He was at that time on a work release program in Iowa, having served 13 months for statutory rape in that state.

Appellant heard no more about his daughter until April, 1975, when a Children's Services Division (CSD) caseworker sent him a letter informing him that his daughter had been made a ward of the court and was in foster care in Oregon. Shortly after receiving the letter, appellant called the caseworker and told her he wanted to obtain custody of the child. During the next two months the caseworker and appellant exchanged several letters and phone calls. Appellant promised to send money for the child's support. A jurisdictional hearing concerning the child was scheduled in juvenile court for early July, 1975.

---

parent or parents have failed or neglected without reasonable and lawful cause to provide for the basic physical and psychological needs of the child for one year prior to the filing of a petition. In determining such failure or neglect, the court shall consider but is not limited to one or more of the following:

"(a) Failure to provide care or pay a reasonable portion of substitute physical care and maintenance if custody is lodged with others.

"(b) Failure to maintain regular visitation or other contact with the child which was designed and implemented in a plan to reunite the child with the parent.

"(c) Failure to contact or communicate with the child or with the custodian of the child. In making this determination, the court may disregard incidental visitations, communications or contributions."

Appellant was unable to appear because his Iowa parole officer would not allow him to leave the state.

During the next nine months (July, 1975-March, 1976) the caseworker and appellant had no contacts. In late March, 1976, appellant wrote the caseworker, apparently in response to the initial petition for termination. He said he would do anything to gain custody of the child and informed her that his parole would be completed March 30. The caseworker wrote back, asking appellant for his plans for caring for the child. She received no response. She next heard from appellant in mid-October, when he arrived in Portland. In the meantime, the parental rights of the child's mother had been terminated.

The November, 1976, hearing was held before Judge Deiz. In addition to the evidence summarized above, it was shown that appellant had had difficulty holding a job and that he had moved frequently. Judge Deiz denied the petition, finding that the state had established only that appellant had failed to pay any support for the child during a few months in which he should have been able to make at least a minimal contribution. The child's temporary commitment to CSD was continued. The court ordered appellant to submit to psychiatric evaluation and directed that

"* * * supervised visitation be set up between the father and the child within the discretion of the Children's Services Division and arrangements be made for the father to attend parenting classes * * *."

The court also ordered appellant to pay $50 per month for the support of the child and provided that the case be reviewed in March, 1977, "to determine the progress made regarding the establishment of an ongoing relationship of the father with the child."

In December, 1976, appellant underwent psychiatric and psychological evaluation, the results of which are summarized below. On the basis of those evaluations and the fact that the November order was being appealed by the state, the CSD caseworker denied

appellant any opportunity to visit the child. (The appeal was later dismissed on the state's own motion.) Moreover, she refused to help arrange parenting classes for him. In an effort to improve his parenting skills and his ability to relate to children, appellant volunteered as an aide at a day care center. He stabilized his employment situation somewhat and took a two-bedroom apartment near relatives who had expressed a willingness to help with the child.

On April 11, 1977, the state filed the petition which resulted in the order which is the subject of this appeal. It alleged that

"* * * the father of the * * * child, is unfit by reason of conduct and condition seriously detrimental to the child and integration of the child into the home of said father is improbable in the foreseeable future due to conduct and conditions not likely to change, to wit:

"(1) There has been a lack of effort on the part of Robert Anderson to adjust his circumstances, conduct and conditions so as to make the return of the child possible.

"(2) Robert Anderson has failed to effect a lasting adjustment of his conduct, conditions and circumstances after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected."

On July 18 and 19, 1977, a hearing on that petition was held before Judge Van Hoomissen. The bulk of the testimony came from two psychiatrists and a psychologist who had examined appellant in December, 1976. Tests showed that appellant had an IQ of 91, within the normal range. The experts all concluded, however, that appellant had an "inadequate personality." One of them defined "inadequate personality" as "a personality disorder with schizoid trends." Another defined it as "individual difficulty coping with ordinary pressures placed on him or [*sic*] in an average relationship." It was also explained that appellant was "just simply not on a par with other people for his average age and norm." In explaining their conclusions, each

[ 566 ]

expert relied upon appellant's difficulty in holding a job for any substantial period. They also pointed to evaluations which indicated that appellant had difficulty trusting and relating to others, had low self-esteem and had a tendency to project his problems onto others. One of the psychiatrists testified that he suspected appellant had an impaired capacity to love others.

Appellant's history showed that he had had a deprived childhood, which the expert witnesses thought responsible for many of his problems and inadequacies. He had had no satisfactory parenting models and was ignorant of the standard methods of child rearing. Appellant had been physically abused as a child. On that basis, and considering that he had had poor relationships with women, the experts concluded that there was an increased likelihood that he would physically abuse his child.

One psychiatrist stated that appellant may not be able to cope with the stress of raising a young child; all agreed that he would be unable to maintain an adequate emotional relationship with his daughter. They predicted that appellant would not be able within a year or two to make significant progress in correcting his problems and inadequacies. One psychiatrist did concede that the possibility of regaining custody of the child could substantially motivate appellant. All three expert witnesses recommended termination.[3]

We find the evidence inadequate to support termination under the standards of ORS 419.523(2). The basic requirements for termination under that subsection are that the parent be "unfit by reason of conduct or condition seriously detrimental to the child" and that "integration of the child into the home of the parent * * * is improbable in the foreseeable future due to conduct or conditions not likely to change."

_____

[3] One psychiatrist concluded that he "did not find it helpful for the child to have [appellant] as father."

We are mindful that appellant and the child have never seen each other and that the establishment of a relationship may be difficult. In *State ex rel Juv. Dept. v. Wyatt,* 34 Or App 793, 579 P2d 889 (1978) we stated, however, that

> "* * * [t]he existence of a prognosis that a person will, at some time in the future, turn out to be a poor parent should not, standing alone, serve as the basis for terminating parental rights. There should be some demonstration of a present failure to properly perform the parenting role * * * or, in the alternative, substantial certainty that the parent will not be able to perform that role with minimal adequacy." 34 Or App at 797.

We do not believe the state has made such a showing here. The evidence indicates that appellant is genuinely interested in his daughter and has made efforts to adjust his situation so that he can obtain custody. We are not convinced that an adequate adjustment cannot be made.[4]

Reversed and remanded.

**LEE, J.,** dissenting.

In my opinion the majority has, to the great detriment of the child, unrealistically weighed the evidence. Based upon the facts set forth in the majority opinion I arrive at the opposite conclusion and would affirm the trial judge who saw and heard the witnesses.

The unfortunate result in this case is attributable, in part, to our decision in *State ex rel Juv. Dept. v. Wyatt,* 34 Or App 793, 579 P2d 889 (1978), which was relied upon by the majority in the instant case. That decision was justifiably challenged by Judge Johnson's dissenting opinion, with which I agree.

In both cases, the interests of the child have been subordinated to those of unfit parents who cannot ever

---

[4]In light of our holding, we need not reach other issues raised by appellant.

realistically be anticipated to rehabilitate themselves sufficiently to properly perform the parenting role.

I respectfully dissent.