Argued and submitted February 25, reversed April 13, 1981

In the Matter of Haamon Harden,
a child.

STATE ex rel JUVENILE DEPARTMENT OF
MULTNOMAH COUNTY,
*Respondent,*

*v.*

HARDEN,
*Appellant.*

(No. 48,540 - A, CA 17972)

626 P2d 944

Yvonne M. Stevenson, Portland, argued the cause for appellant. On the brief were Herbert A. Trubo and Friedman & Trubo, Portland.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

**ROBERTS, J.**

This is an appeal from a termination of parental rights proceeding in which both the mother's and the father's rights were terminated. The father appeals, arguing the evidence as to him was insufficient to support the termination of his rights. We reverse the termination of the father's rights because in our *de novo* review we agree that the evidence is insufficient to support the termination within the meaning of ORS 419.523(2) (b), (c) and (e).[1]

The petition alleges as follows:

"B. The parents of Haamon Harden are unfit by reason of conduct or condition seriously detrimental to the child and reintegration into the home of the parents is improbable in the foreseeable future due to conduct or condition not likely to change, to wit:

"(1) The parents have subjected Haamon to physical cruelty.

"(2) The parents have a history of drug abuse.

"(3) The parents have histories of extensive criminal conduct.

"(4) The parents have failed to effect a lasting adjustment after reasonable efforts by available social agencies for such duration of time that it appears no lasting adjustment can be effected.

---

[1] ORS 419.523 provides:

"* * * * *

"(2) The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable in the foreseeable future due to conduct or conditions not likely to change. In determining such conduct and conditions, the court shall consider but is not limited to the following:

"* * * * *

"(b) Conduct toward any child of an abusive, cruel or sexual nature.

"(c) Addictive use of intoxicating liquors or controlled substances.

"* * * * *

"(e) Lack of effort of the parent to adjust the circumstances of the parent, conduct, or conditions to make the return of the child possible or failure of the parent to effect lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected."

"(5)   There has been a lack of effort on the part of the father to adjust his circumstances to make return of the child possible."

During the three and one-half days of trial the evidence presented described the parenting abilities, or lack thereof, of both parents while they lived together. A large portion of the evidence, however, was related to the mother's parenting abilities with her three daughters who are not the children of father and who are not the subject of this case. As to the subject child, too, there was a greater amount of evidence regarding the mother's parenting abilities than the father's. Because the evidence offered did not adequately distinguish between each parent, the court may have tended to lump the two together. The mother's problems with her daughters, which were not dispositive the father's rights, and her attitude toward their son may well have tainted the father's case.[2] Toward the end of the trial the mother failed to appear in court at all and, through counsel, consented to the termination of her rights in her son, the only subject of this proceeding. Father was present for the entire trial. The court continued to take evidence as to both parents, made oral findings and terminated the rights of both parents.

The following facts are pertinent. At the time of the initiation of this proceeding the child was approximately two years old and was three years old at the time of the hearing. The parents and child have not lived together since the child was made a ward of the court and placed in foster care at the age of nine months. This occurred following an incident in which he suffered a spiral fracture of one of his legs. During the following year Children's Services Division (CSD) was involved with the parents' visitations with the child and in referring the father to parenting classes. A CSD worker who observed the father visiting with the child testified he was very affectionate and that it was her belief the father was not cruel or abusive. At the time of the hearing the parties had separated and

---

[2] CSD has not filed a petition for termination as to the three daughters of the mother. Apparently, the reason for not initiating termination proceedings was the fact that the grandmother was willing to raise the girls, but, because she was 65 years old, she said she could not also take this child.

expressed their intention to be divorced. The father was incarcerated at the Oregon State Penitentiary for theft in the first degree, but has since been released on a work permit and was working for his former employer.

The court made oral findings:

"THE COURT: I frankly felt that B (1) [of the petition] has some elements of proof in it. The elements of proof I felt substantiated B (1) was the time that the child had a spiral fracture as a result of the tugging and pulling war that occurred between Mr. and Mrs. Harden. I think that really amounted to physical cruelty. * * *.

"* * * I think it has been established based on that one circumstance by a preponderance of the evidence.

"With respect to B (2). I find that the parents have had a history of drug abuse. * * * I do believe that both Mr. and Mrs. Harden admitted a past history of drug abuse. While I am mindful that the hard drug abuse had not occurred within the last 18 months or two years, to any significant degree, if at all, nevertheless they continue to misuse alcohol. Alcohol, of course, is a drug. I believe, therefore, that B (2) has been proven.

"With respect to paragraph B (3), it goes without saying that the admissions by both Mr. and Mrs. Harden as to their arrests and conviction of various crimes has been proven from their own mouths and the convictions of Mr. Harden, I believe, were also proven through the introduction of judgment records which came in without objection.

"With respect to B (4). I might also say with respect to B (3) that it's obvious in the record that Mr. Harden is presently serving a term in the Oregon State Penitentiary for a crime of theft which he did in 1979, as I recall the testimony.

"B (4). Again, based upon the continued inability of Mr. and Mrs. Harden to work with the social agencies in a manner which would indicate a continuing long-term commitment on their part to hang back, it seems to me that they have failed to effect a lasting adjustment after reasonable efforts by those agencies and Haamon is now almost two years old and the period of time seems to me to be most adequate for demonstrating that failure to effect a lasting adjustment."

"Finally, with respect to B (5). I don't think that Mr. Harden has demonstrated to the Court's satisfaction his true commitment to be a full-time parent. I think if he had, he would have stopped his drinking in 1979. He wouldn't

have found himself in a situation where he was stealing a lamp from the Lloyd Center and ended up back in the penitentiary. I think he would have done a lot more to be certain that he was available to Haamon when Haamon needs him most, which is in Haamon's earlier years."

This case presents this court with the difficult task of weighing the evidence of parenting ability as it applies to the father alone when much of the evidence related to situations and events before the birth of his child. While we recognize that CSD was attempting to show a pattern of parental behavior that could be expected to be applied to this child, it is necessary to sort through the evidence to determine whether there is sufficient evidence that *father* is an unfit parent by reason of conduct or condition seriously detrimental to this child. This also requires a finding as to whether integration of the child into the home of father is improbable in the foreseeable future due to conduct or conditions not likely to change.

The evidence shows that the single injury the child is shown to have suffered occurred at a time when the parents were having marital difficulties, the mother having announced she was leaving the family home and taking the child. The father tried to prevent her from taking the child and the injury resulted. Father, obviously, is as responsible as mother for that abhorrent event. However, there is no other evidence of abuse or cruelty to the child, and there is the favorable CSD visitation evidence. *See State ex rel Juv. Dept. v. Holland,* 290 Or 765, 625 P2d 1318 (1981).

The evidence that father was involved with drugs dates from before the birth of this child, and before the father participated in a drug rehabilitation program.[3] During the time of CSD's involvement with this child the father was not using drugs. That he was, as the court noted, having some problems with alcohol is not alone sufficient to terminate his parental rights. It must be shown that the alcohol problem is seriously detrimental to the child and that the child can not be integrated into the home because father's conduct is not likely to change.

---

[3] This program was a condition of probation for criminal activity in drugs.

We do not find father's criminal record dispositive. After the child was removed from the home and the parties separated, the father was convicted of theft in the first degree. He is now on work release from that incarceration. It is hoped that the optimism expressed in *State v. Grady,* 231 Or 65, 69, 371 P2d 68 (1962), is applicable here and that this parent will also "return to a life of * * * normalcy and correct living."

The father's interest in the child is high. The evidence shows that after the child was placed in foster care the father visited him, he demonstrated an interest in him, played with him and held him. The father also attended parenting classes reasonably regularly.[4] Father also put on evidence of his ability to care for the child, in terms of cooking and housekeeping abilities, and members of his family testified that they would give him assistance in caring for the child if necessary. There was no contradictory evidence on that point by CSD.

We are mindful of CSD's responsibility for the protection of children and its duty to anticipate and prevent parental conduct that will be seriously detrimental to a child. Whether, in this case, the father's conduct will be seriously detrimental to the child and will be such that the child cannot be integrated into his home in the foreseeable future is for CSD to continue to evaluate, but on the evidence in this record we cannot say it can be predicted with a substantial certainty that father will not be able to perform the parenting role. *State ex rel Juv. Dept. v. Wyatt,* 34 Or App 793, 579 P2d 889, *rev den* (1978).

Reversed.

---

[4] The evidence shows that he attended seven of the twelve meetings scheduled for his group. While his attendance record is not exemplary, it indicates some willingness to try to become a good parent.