Argued and submitted March 29, reversed October 13, 1982

In the matter of S., a child.

## STATE ex rel JUVENILE DEPARTMENT OF MULTNOMAH COUNTY,

*Respondent,*

*v.*

## JENKINS,

*Appellant.*

(No. 70,038, CA A21800)

651 P2d 1374

Janet A. Metcalf, Portland, argued the cause for appellant. With her on the brief was English & Metcalf, Portland.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

Father seeks reversal of an order terminating his parental rights in his son, who is seven years old. Mother is deceased. The petition for termination alleged that father is unfit by reason of conduct or condition seriously detrimental to the child and that integration of the child into father's home is improbable in the foreseeable future because of conduct and conditions not likely to change. ORS 419.523(2).[1] We review *de novo,* ORS 419.523(4), and reverse.

The child, who we call "S," was born on August 28, 1975. His parents never married. S. lived with mother in the home of a family friend, Mrs. Holland, until mother's death on July 4, 1980. On August 6, 1980, S. was found to be within the jurisdiction of the juvenile court, and he was temporarily committed to Children's Service's Division (CSD). S. continued to live with Mrs. Holland after mother's death until December 6, 1980, when conflicts arose with Mrs. Holland's boyfriend. Since that time he has been with a different foster family. S. is described as an "attractive, intelligent child" who is doing reasonably well in school and has no serious problems.

---

[1] *ORS 419.523 provides in part:*

"(1) The parental rights of the parents of a child within the jurisdiction of the juvenile court as provided in subsection (1) of ORS 419.476 may be terminated as provided in this section and ORS 419.525. The rights of one parent may be terminated without affecting the rights of the other parent.

"(2) The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents are unfit by reason of conduct or integration of the child into the home of the parent or parents is improbable in the foreseeable future due to conduct or conditions not likely to change. In determining such conduct and conditions, the court shall consider but is not limited to the following:

"(a) Emotional illness, mental illness or mental deficiency of the parent of such duration as to render it impossible to care for the child for extended periods of time.

"(b) Conduct toward any child of an abusive, cruel or sexual nature.

"(c) Addictive use of intoxicating liquors or controlled substances.

"(d) Physical neglect of the child.

"(e) Lack of effort of the parent to adjust the circumstances of the parent, conduct, or conditions to make the return of the child possible or failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjusting can be effected."

Father is now 25 years old. As a juvenile, he was committed to McLaren in 1973 on a second degree burglary charge. Earlier, in 1972, he was found to have aided and abetted in a first degree robbery. In 1975, father was convicted of six separate charges of criminal activity in drugs and sentenced to the Oregon State Correctional Institute.[2] The record contains no evidence that he uses drugs. There is, however, some testimony that his criminal activity may be related to a drinking problem. Since the felony convictions in 1975, father has been in and out of jail due to parole and probation revocations resulting from traffic offenses and a misdemeanor conviction. Most recently, he was released on temporary leave in January, 1981, but was returned to the Oregon State Penitentiary in June, 1981. Father testified at the termination hearing that he expected to be released permanently in June, 1982.[3] There is also a pending charge of criminal mischief, a class C felony.

The state argues that father is unfit as a parent by reason of "conduct or condition," *i.e.*, his "extensive history of criminal conduct"; his incarceration "for a substantial period of time since March 29, 1976"; his failure to contribute support; and his failure to visit S. since July 4, 1980.[4] Father argues that the evidence is insufficient to terminate his parental rights.

After the trial court's decision, the United States Supreme Court held that, before a state can terminate parental rights, due process requires that the state prove its allegations by *clear and convincing evidence.* *Santosky v. Kramer,* 455 US 745, 102 S Ct 1388, 71 L Ed 2d 599 (1982). In light of this decision, we have recently held that the standard of proof in ORS 419.525(2)[5] is unconstitutional and that we must apply the higher standard of proof in

---

[2] The indictments reveal that the six charges were for heroin sales made on September 19, 20, 21 and 23, 1975.

[3] The record does not contain a parole date or the actual sentence father is now serving. We have not been apprised whether his release occurred as predicted.

[4] The petition also alleged that father had failed to establish paternity of S.; however, he formally admitted paternity at the hearing.

[5] ORS 419.525(2) provides, as pertinent:

"The facts on the basis of which the rights of the parents are terminated, unless admitted, must be established by a preponderance of competent evidence * * *."

our *de novo* review of the record. *State ex rel Juv. Dept. v. Farrell,* 58 Or App 258, 648 P2d 401, *rev den* 293 Or 521 (1982).

■     There is no doubt that father has spent a good part of his young life in jail. Indeed, he was in the penitentiary at the time of the hearing. However, incarceration alone is rarely enough to warrant parental termination. *State v. McMaster,* 259 Or 291, 486 P2d 567 (1971); *State v. Grady,* 231 Or 65, 371 P2d 68 (1962); *but see State ex rel Juv. Dept. v. Newman,* 49 Or App 221, 227, 619 P2d 901, *rev den* 290 Or 449 (1981). The additional allegations relied upon by the state, *i.e.,* lack of financial contribution and visitation since mother's death, also appear to be inconclusive as to father's fitness as a parent.

■     Father testified that during the 11 months following mother's death he tried unsuccessfully to locate his son. Since July 4, 1980, three CSD caseworkers and two juvenile court counselors have handled S. case. Only the last of the CSD caseworkers contacted father. After several attempts, father made telephone contact with one juvenile court counselor. His ability to make further communication was limited by his return to the penitentiary. Before mother's death, he spent as much time as possible with S. That was difficult at times because of the hostility exhibited by mother's boyfriend. Although his ability to contribute financially to S. support was limited, he testified that he bought the child presents and clothes when he could. In the interim, S. has developed a relationship with father's large, extended family. There is nothing in the record to indicate that the contact between father and son has been unpleasant, destructive or detrimental.

The state has also failed to establish that S. cannot be integrated into father's home. Father lived with his sister Esther during his last release from incarceration. His plan is to live with Esther again until he finds employment. Because she expressed interest in caring for S., her home was investigated by CSD. The report described the home as "comfortable, well-furnished and neatly maintained." Esther was described as a "slim, attractive, soft-spoken young woman who appears to have a natural ability to

nurture children in a most warm and gentle way."[6] She supports her brother's plan to take custody of S. and has agreed to help care for S. while he seeks employment.

The trial court described father as a "decent, honest, direct and * * * a nice looking person, * * * [who is] utterly sincere." He has not been convicted of a felony since 1975. The court felt that he would "probably win" the struggle to order his life. On this record we are not independently satisfied that the conduct or condition of father is seriously detrimental to the child; nor are we convinced that it is improbable that father's conduct and conditions are likely to change in the foreseeable future. While the primary concern remains the best interests of the child, the interests of the parent are constitutionally protected and must be considered. *Santosky v. Kramer, supra; State v. McMaster, supra,* 259 Or at 296; *State ex rel Juv. Dept. v. Wyatt,* 34 Or App 793, 798, 579 P2d 889, *rev den* (1978). On this record, the evidence is not clear and convincing that father's parental rights must be terminated.

Reversed.

---

[6] Despite this glowing report, Esther's home was recommended as a temporary resource only. One explanation for this limited recommendation is the small income with which she raises her own three children and her inability to explain how she could financially provide for a fourth child.