Argued and submitted July 9, reversed September 12, 1984

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

HERMAN,
*Appellant.*

(75,721; CA A30012)

687 P2d 812

M. Peter Miller, Portland, argued the cause and filed the brief for appellant.

Philip Schradle, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Young, Judge.

YOUNG, J.

## YOUNG, J.

Mother appeals the termination of her parental rights in her daughter. The sole issue on appeal is whether the state proved by clear and convincing evidence that integration into the mother's home is "improbable in the foreseeable future due to conduct or conditions not likely to change." ORS 419.523(2); *State ex rel Juv. Dept. v. Chapin,* 66 Or App 932, 675 P2d 1117 (1984). On *de novo* review, ORS 419.561(4), ORS 19.125(3), we determine that the state failed to meet its burden of proof and reverse.

Mother is 27. Heather is four-and-one-half. In the fall of 1981, mother moved in with Frank Herman, who is not Heather's biological father. On January 20, 1982, Frank struck Heather, who was not quite three years old, in the head, causing life-threatening injuries. In a hospital emergency room the doctors diagnosed Heather's head injury and various bruises as the result of child abuse.[1] The following day, Heather was temporarily committed to Children's Services Division (CSD) by order of a juvenile court referee. On January 22, 1982, a juvenile court counselor filed a petition for an investigation into Heather's condition and circumstances. On March 17, 1982, based on mother's admissions of the allegations contained in the petition, the referee ordered that Heather be made a ward of the court and temporarily committed her to CSD. The referee's order provided in part:

> "The mother is ordered to comply with the request of Child Services Division; (a) specifically in submitting to a psychological evaluation, with a signed release of information to the court and Children's Services Division, and with her boyfriend [Frank Herman] also submitting to such psychological examination; (b) that mother and her boyfriend be involved in a parenting skills course by completing the entire course and demonstrating an ability to use the skills; (c) that the mother and her boyfriend be involved in a counseling program designed to assist them in determining what their relationship will be."

In March, 1982, mother and Frank began attending CSD parent training classes. Frank's attendance was interrupted when he was convicted of assault in the second degree

---

[1] The coloration of the bruises indicated that they were inflicted over a period of time.

and criminal mistreatment in the first degree arising out of the January incident. He began serving a one-year jail sentence in April, 1982. He served nearly six months and was released in September, 1982, on five years' probation. In spite of the interruption, both Frank and mother successfully completed the curriculum in parental training. Mother began therapy with Dr. Scott of Catholic Family Services on April 15, 1982, and continued until the time of the hearing on a weekly basis. Frank maintained the same schedule, starting approximately two to three months after mother. In October, 1982, they were married. On June 15, 1983, CSD filed a petition to terminate mother's parental rights. On September 21, 1983, the trial court granted the petition and ordered that the parental rights be terminated.

ORS 419.523(2) provides:

> "The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable in the foreseeable future due to conduct or conditions not likely to change. In determining such conduct and conditions, the court shall consider but is not limited to the following:
>
> "* * * * *
>
> "(b)   Conduct toward any child of an abusive, cruel or sexual nature.
>
> "(c)   Addictive use of intoxicating liquors or controlled substances.
>
> "(d)   Physical neglect of the child.
>
> "(e)   Lack of effort of the parent to adjust the circumstances of the parent, conduct, or conditions to make the return of the child possible or failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected."

The state's contention is that mother is "unfit by reason of conduct or condition seriously detrimental to the child," because she married Frank. We have said that a continuing relationship with a child abuser can be a basis for terminating parental rights. *See State ex rel Juv. Dept. v. Darnell,* 49 Or App 561, 619 P2d 1349 (1980); *State ex rel Juv.*

*Dept. v. East,* 38 Or App 59, 589 P2d 744, *rev den* (1979). The trial court's concern was that Heather cannot be safely integrated into the home because of Frank's record of child abuse.

■    Frank's conduct toward the child in January, 1982, which resulted in the life-threatening injury, is reprehensible and inexcusable. However, the fact that mother married him does not in itself support the termination order. The state is required to prove by clear and convincing evidence that integration into the home is "improbable in the foreseeable future due to conduct or conditions not likely to change." To meet the statutory requirement the state must prove that a parent is *presently* unfit and that the present unfitness is unlikely to change in the foreseeable future. *See State ex rel Juv. Dept. v. Chapin, supra; State v. Blum,* 1 Or App 409, 417, 463 P2d 367 (1970).

The state's case consisted primarily of a retrial of the assault and mistreatment charges. Mother offered evidence that she and Frank had complied with the referee's order requiring counseling and parenting classes. The evidence established that Frank had stopped using drugs and had completed an alcohol diversion program. Both Frank and mother were working. They have moved into a new apartment, changed their associates and are active members of a Christian support group.

Dr. Scott, who had worked with mother and Frank for approximately a year and one-half, testified:

> "I point out that I think there's some significant changes. The use of all drugs has ceased. They've become involved in a church and religious [sic]. My working with them, I felt that they had begun to work through to look at and to handle some of the problems in their past life. * * * I think [mother] would be a fit adequate mother."

Concerning mother's fitness as a mother in the context of her marriage to Frank, Dr. Scott testified:

> "My opinion about that is that if there's no use of alcohol or other drugs that are not prescribed, of course, if they continue in their religious affiliations, and third if they would continue some form of professional treatment, [that under these conditions the child could be returned to the Herman home]."

■     The evidence in this case establishes that mother and Frank have made a substantial effort to turn their lives around and make integration of the child in their home possible. We are confronted with a situation in which the state proved conclusively that the condition of the mother's home was seriously detrimental to the child because of the presence of Frank and because mother did not protect the child from Frank. That condition is not only "likely to change"; it may be changed already. There is no longer abuse of intoxicating liquor or controlled substances, ORS 419.523(2)(c), and mother and Frank have made every effort to cooperate with social agencies to make return of the child possible. ORS 419.523(2)(e). To adopt the state's reasoning in this case would be to hold that, as a matter of law, Frank cannot be reformed and that the condition and circumstances that required removal of Heather from her mother's home cannot be improved by *any* effort by mother and her husband, no matter how exemplary that effort may be. That is not the letter or policy of ORS 419.523(2).

Reversed.[2]

---

[2] Our disposition does not mean, of course, that the child must be immediately returned to the family. Children's Services Division retains jurisdiction over the child and may make an appropriate plan regarding her reintegration into the family.