Submitted on record and briefs February 10,
affirmed March 3, 1975

IN THE MATTER OF THE DISSOLUTION OF THE MARRIAGE OF
ELLENWOOD, *Appellant, and* ELLENWOOD
(No. 37552), *Respondent.*

532 P2d 259

Slocum and Poole and Ronald Poole, Roseburg, for appellant.

Geddes, Walton & Richmond and Peter Nilsen, Roseburg, for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Husband appeals from a marriage dissolution decree, contending the court erred in awarding custody of two daughters, ages 4 and 2, to wife instead of himself.

The parties married in 1969. Husband was in the Air Force. After birth of the first child and the first separation of the parties, husband was stationed in Viet Nam. Stormy marital relations continued, leading to a special "compassionate" reassignment of husband back to the United States to straighten out their domestic difficulties. The second daughter was born after a reconciliation which followed filing of a marriage dissolution case and its abandonment.

Husband finished his enlistment and went to a technical institute with G.I. Bill aid. The parties intermittently continued to be together for a while and then separate. Association by each with paramours, besides other evidences of instability shown by each, apparently contributed to their disagreements. We see no need to repeat in detail the shortcomings of the parties.

With reference to the disputed facts the trial judge's remarks at the close of the trial summarize the inferences to be drawn from the evidence as well as we can do:

"* * * These children have been with their mother ever since these parties have been separated and during the periods which they have been reconciled * * *. And I gather from the testimony which has been given today, that these are normal children. They are dirty part of the time and clean part of the time. They are just like everyone else, so the Court is going to discount that.

"Some criticism was made on behalf of Mr. Ellenwood as to the condition of the children's clothes. Somewhat surprising because he is hardly in a position to criticize the fact the children had ragged underwear and not adequate clothing, when he has really made no effort, little effort, if any, to provide some help for the mother and help pay for these children's clothing. I realize he has been in school during a period of the time that they were married and while they were separated, but some effort could have been made by him during this year part of the time, even when he was going to school in Klamath Falls; also since they have been separated and he has been working at Tektronix and otherwise * * *.

"* * * * *.

"Morally, both of these parties are not to be commended. Mrs. Ellenwood has indicated that she has had affairs with other men. And this is one matter which is of serious consideration to the Court. Certainly, if that is a matter which has continued and is continuing over a period of time and will continue, this is not the place for these children. * * * [I]f she continues in the manner in which she has indicated she has, they don't belong in her home. However, the Court is going to award the children to her at this time. In the event, as I said, she keeps it up, this custody is subject to modification * * *."

ORS 107.105(1)(a) provides:

"* * * In determining custody the court shall consider the best interests of the child[①] and the

---

①In a newly published analysis of the traditional "best interests of the child" rule applied by legislatures and courts in matters relating to child custody, the authors urge some guidelines to be used in the decisional process. Among these is that instead of thinking in terms of the traditional "best interests of the child" guideline, we recognize that the child's "best interests" have disappeared with his opportunity to be integrated from birth to maturity in a normal, well-rounded family relationship.

past conduct and demonstrated moral standards of each of the parties * * *."

In *Tingen v. Tingen,* 251 Or 458, 459-60, 446 P2d 185 (1968), the Supreme Court stated:

"In determining the best interests of a child in a custody dispute the court ought to consider all the relevant factors. These, as we see them, would generally include: (1) the conduct of the parties; (2) the moral, emotional and physical fitness of the

Having recognized that, the child's remaining best interests are recognized as being represented by the least detrimental available alternative for the child.

The authors say:

"* * * The traditional goal of such interventions [by judicial process in child custody cases] is to serve 'the best interests of the child.' In giving meaning to this goal, decision-makers in law have recognized the necessity of protecting a child's physical well-being as a guide to placement. But they have been slow to understand and to acknowledge the necessity of safeguarding a child's psychological well-being. While they make the interests of a child paramount over all other claims when his physical well-being is in jeopardy, they subordinate, often intentionally, his psychological well-being to, for example, an adult's right to assert a biological tie. Yet both well-beings are equally important, and any sharp distinction between them is artificial." Goldstein, Freud, Solnit, Beyond the Best Interests of the Child 4 (1973).

"Continuity of relationships, surroundings, and environmental influence are essential for a child's normal development. Since they do not play the same role in later life, their importance is often underrated by the adult world.

"* * * * *.

"* * * Where continuity of such relationships is interrupted more than once, as happens due to multiple placements in the early years, the children's emotional attachments become increasingly shallow and indiscriminate. They tend to grow up as persons who lack warmth in their contacts with fellow beings.

"For *young children* under the age of 5 years, every disruption of continuity also affects those achievements which are rooted and develop in the intimate interchange with a stable parent figure, who is in·the process of becoming the psychological parent. The more recently the achievement has

parties; (3) the comparative physical environments; (4) the emotional ties of the child to other family members; (5) the interest of the parties in, and attitude toward, the child; (6) the age, sex and health of the child; (7) the desirability of continuing an existing relationship and environment; and (8) the preference of the child.

"Best interest in custody matters should not be determined by isolating one of these variable factors and relying on it to the exclusion of other factors. Rather, best interest should be determined upon these, and other, relevant factors by a weighing and balancing process, and not by treating any one of them as a fixed rule or standard."

The trial court, in parts of its oral opinion we have omitted from the above quotation, balanced the factors related in *Tingen*. It gave substantial weight to the fact that the children always have been in wife's care. Their psychological attachment to her as the only continuous parent figure they have known is a strong reason for the trial court's decision, and, after balancing the applicable factors, we come to the same conclusions the trial court did.

----

been acquired, the easier it is for the child to lose it. Examples of this are cleanliness and speech. After separation from the familiar mother, young children are known to have breakdowns in toilet training and to lose or lessen their ability to communicate verbally." (Footnote omitted.) *Id.* 31-33.

The authors' fictitious Lord Baltimore, in an opinion in a case bearing some resemblances to that at bar, is quoted:

"* * * I return to the guidelines that have governed my decisions. I am convinced that, by and large, society must use each child's placement as an occasion for protecting future generations of children by increasing the number of adults-to-be who are likely to be adequate parents. Only in the implementation of this policy does there lie a real opportunity for beginning to break the cycle of sickness and hardship bequeathed from one generation to the next by adults who as children were denied the least detrimental alternative." *Id.* 111.

"* * * What registers in [children's] minds are the day-to-day interchanges with the adults who take care of them and who, on the strength of these, become the parent figures to whom they are attached." Goldstein, Freud, Solnit, Beyond the Best Interests of the Child 12-13 (1973).

*See also Goode v. Goode,* 4 Or App 34, 476 P2d 805 (1970); and *State v. Blum,* 1 Or App 409, 416, 463 P2d 367 (1970).

Affirmed.