Argued June 23, affirmed July 26, reconsideration denied September 1, petition for review denied September 21, 1976

In the Matter of C., a Child
## STATE ex rel JUVENILE DEPARTMENT OF MULTNOMAH COUNTY, *Respondent,*
*v.*
## F.S., *Appellant.*
## (No. 32-866, CA 5935)
552 P2d 586

See also 26 Or App 215, 552 P2d 584.

*Jay Edwards,* Portland, argued the cause and filed the brief for appellant.

*Kevin L. Mannix,* Assistant Attorney General, Salem, argued the cause for respondent Juvenile Department. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

[ 209 ]

*Kristena A. LaMar,* Portland, argued the cause and filed a brief for child.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

FOLEY, J.

**FOLEY, J.**

The parental rights of the mother of a seven-year-old female child were terminated, after hearing, by the circuit court. The mother appeals, asserting three assignments of error: (1) The evidence at trial was insufficient to justify termination; (2) the trial court should have empaneled a jury; and (3) the court erred in admitting the Children's Services Division (CSD) file in evidence.

■ Detailing the evidence in this case would serve no useful purpose. The mother has had physical custody of the child for less than one month of its life. By her own admissions, the mother had become involved with alcohol, drugs and prostitution, as well as a number of additional crimes. At the time of the hearing she was in jail and had been incarcerated for almost a year. During the time she was not in jail, her visitation with the child was erratic. Visitation resulted in extreme anxiety on the part of the child who rejected her mother as a psychological parent and became attached to her foster parents.

The trial court found the mother

"* * * unfit by reason of conduct and condition seriously detrimental to the child and [that] integration of the child into the home * * * is improbable in the foreseeable future due to conduct and conditions not likely to change * * *."

In concluding his assessment of the evidence, the trial judge said:

"* * * In this case, and without violating the Court's recognition that the quantum is by a preponderance, the Court finds the obligation to terminate parental rights absolutely conclusive, just one step beyond a reasonable doubt. * * *"

Our review of the record leads us to concur with the trial judge that the evidence supports termination. *See State ex rel Juv. Dept. v. K.M.S.,* 26 Or App 219, 552 P2d 578 (1976).

■ In her second assignment of error the mother con-

tends that she had a right to a jury trial on the issue of termination of parental rights.

The legislature has determined that juvenile court hearings shall be held informally by the juvenile court without a jury. ORS 419.498. This provision applies to termination of parental rights proceedings, which are to be decided by the juvenile court. ORS 419.523, 419.525, 419.472(3).

The United States Supreme Court has held that the Due Process Clause does not require a jury trial in juvenile proceedings. *McKeiver v. Pennsylvania,* 403 US 528, 91 S Ct 1976, 29 L Ed 2d 647 (1971). The Oregon Supreme Court had earlier reached the same conclusion. *State v. Turner,* 253 Or 235, 453 P2d 910 (1969). The reasoning in *Turner* is in part applicable to termination proceedings:

"Adverting again to the fundamental fact that we are dealing with children and not with adults, the ultimate question in a juvenile proceeding is not one of 'guilt' or 'innocence,' but rather one of determining what is in the best interest of the child.

"Many thoughtful students of behavior and rehabilitation believe there are valid policy reasons for holding that due process, when applied to children, does not necessarily include the right to have a jury pass upon the question of fact which must lie at the threshold of juvenile wardship.

"Regardless of the veneration in which Anglo-American law rightly holds the jury as an instrument of criminal justice, it must be remembered that crime and punishment are not the primary business of the juvenile court. There is reason to question whether a jury trial is the most trustworthy instrumentality for protecting the rights of the child, his parents, and the state in a proceeding intended to salvage a child, if he is in need of governmental control.

"* * * * *

"The imponderable question, of course, is whether there is any substantial danger that a child brought before a court without a jury would be found 'in need of wardship' when in fact he had not committed the act

[ 212 ]

charged. The concomitant question is whether the presence of the jury in the case would contribute a sufficiently substantial reduction in the margin of error to outweigh the possible harm to the child from participation in the drama of a criminal trial.

"* * * The majority of the states have decided that jury trials in juvenile cases would do more harm than good. * * * [T]he legislators must have believed that the danger of a miscarriage of justice in the absence of a jury was remote.

"Our own Legislative Assembly incorporated the majority view in a new juvenile code in 1959, after a comprehensive study of the available materials in the field. Before this court overturns the considered judgment of our Assembly on this matter, it should be convinced that trial by jury, while indispensable as a part of criminal due process, is also a more trustworthy, more fair, and more beneficial method for discovering the truth in juvenile cases than trial by the judge alone. Counsel have provided us with no data, and we have found none, relevant to the peculiar problems of children which would justify a holding at this time that due process of law cannot be afforded children without the intervention of a traditional jury as employed in criminal cases." (Footnotes omitted.) 253 Or at 241-44.

Applying the considerations set forth in *McKeiver* and *Turner,* due process does not require that parents or children be granted the right to demand a jury trial in termination proceedings.[1]

The mother's third assignment of error involved the trial court's admission into evidence of the CSD file. This court has previously held that the CSD files regarding the child and the child's parents are admissible in a termination proceeding. *State ex rel Juv. Dept. v. Prince,* 20 Or App 213, 530 P2d 1251 (1975).

Affirmed.

[1] *Clarkston v. Bridge,* 273 Or 68, 539 P2d 1094 (1975), relied upon by the mother, concerned the right to a jury in a paternity determination. There the court found the legislation "explicitly provided" that in all filiation proceedings either party had the right to demand a jury trial on the issue of paternity. The *Clarkston* decision involved matters of statutory application, not a determination of the requirements of constitutional due process.