Argued and submitted March 26, reversed May 5, 1980

In the Matter of McDaniel, Kathy, a child.
STATE ex rel JUVENILE DEPARTMENT OF
MULTNOMAH COUNTY,
*Appellant,*
*v.*
McDANIEL,
*Respondent.*

(No. 56,278, CA 15234)

610 P2d 321

Keith E. Meisenheimer, Deputy District Attorney, Portland, argued the cause and filed the brief for appellant. With him on the brief was Harl Haas, District Atttorney, Multnomah County, Portland.

Charles Robinowitz, Portland, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J.

**CAMPBELL, J.**

The state appeals from the trial court's order denying its petition to terminate the father's parental rights.[1]

We review the facts de novo on the record, ORS 419.561(4), 19.125(3), giving due regard to the findings of the trial court, which had the opportunity to observe the witnesses. *State ex rel Juv. Dept. v. Maves,* 33 Or App 411, 576 P2d 826 (1978).

The petition alleged that the father's parental rights should be terminated under ORS 419.523(2) and (3).[2] We observe at the outset that, at the hearing on

---

[1] The court ordered that the child, Kathy McDaniel, be continued as a ward of the court and that Children's Services Division (CSD) would retain custody of Kathy for care, placement, and supervision. It also directed a review of the case in December 1979.

[2] These sections provide:

"(2) The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable in the foreseeable future due to conduct or conditions not likely to change. In determining such conduct and conditions, the court shall consider but is not limited to the following:

"(a) Emotional illness, mental illness or mental deficiency of the parent of such duration as to render it impossible to care for the child for extended periods of time.

"(b) Conduct toward any child of an abusive, cruel or sexual nature.

"(c) Addictive use of intoxicating liquors or controlled substances.

"(d) Physical neglect of the child.

"(e) Lack of effort of the parent to adjust the circumstances of the parent, conduct, or conditions to make the return of the child possible or failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected.

"(3) The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents have failed or neglected without reasonable and

[67]

lawful cause to provide for the basic physical and psychological needs of the child for one year prior to the filing of a petition. In determining such failure or neglect, the court shall consider but is not limited to one or more of the following:

"(a) Failure to provide care or pay a reasonable portion of substitute physical care and maintenance if custody is lodged with others.

"(b) Failure to maintain regular visitation or other contact with the child which was designed and implemented in a plan to reunite the child with the parent.

"(c) Failure to contact or communicate with the child or with the custodian of the child. In making this determination, the court may disregard incidental visitations, communications or contributions."

The petition alleged:

"A. On November 8, 1976, the above-named child was made a ward of the court based upon findings that her condition and circumstances were such as to endanger her welfare, and her parents had failed to provide her with the care, guidance and protection necessary for her physical, mental and emotional well-being.

"B. The above-named child's mother, Leta Boyer, has relinquished her parental rights in and to the child.

"C. The above-named child's father, Rodney McDaniel, is unfit by reason of conduct or condition seriously detrimental to the child and reintegration into the home of the father is unlikely in the foreseeable future due to conduct or condition not likely to change, to wit:

"(1) The father has a history of alcoholism.

"(2) There has been a lack of effort on the part of the father to adjust his circumstances to make return of the child possible.

"(3) The father has failed to effect a lasting adjustment after reasonable efforts by available social agencies for such duration of time that it appears reasonable no lasting adjustment can be effected.

"(4) The father has been incapable of providing care for the child on the two occasions he had her physical custody.

"(5) The father has a history of marital instability.

"(6) The father is not the psychological parent.

"D. The father has failed or neglected without reasonable or lawful cause to provide for the basic physical and psychological needs of the child for more than one year prior to the date of this petition, to wit:

"(1) The father has visited on a sporadic and infrequent basis since the child was placed in foster care in October, 1977."

The trial court found that: allegation (C)(1) was "proved as past history but not . . . as a present condition"; allegations (C)(4), (5), and (6) were proven by a preponderance of the evidence; and allegations (C)(2) and (3) and (D)(1) were not proven.

the petition, the father's attorney conceded that if the child's best interests were the sole factor to consider, termination would be the proper course. In denying the petition, the trial court stated:

"So it's with a great deal of sadness that I will refuse to terminate this parent's rights because I do believe that it would be in the best interests of the child. And if the issue is: May the Court terminate a parent's rights to a child when that relationship has failed for whatever reason and it's not likely to be re-established, then I could very firmly say that this parent's rights should be terminated because I believe the relationship between the father and the child has failed, but I can't say that it's failed due to the father's course of conduct. So I will refuse to terminate the rights."

The court specifically found "that reintegration of this child into the parental home is unlikely in the foreseeable future."

After a review of the record, we concur with the trial court that there is no reasonable likelihood that the child will be reintegrated into the father's home in the foreseeable future, and that the child's best interests weigh heavily in favor of termination. We need not and do not detail the overwhelming evidence leading us to this conclusion. *State ex rel Juv. Dept. v. Navarette,* 30 Or App 909, 569 P2d 26 (1977).

The denial of the petition was based on the trial court's finding that the state failed to prove:

"Lack of effort of the parent to adjust the circumstances of the parent, conduct, or conditions to make the return of the child possible or failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected." ORS 419.523(2)(e).

The court noted that the father arranged on his own for parenting classes and counseling, having received no aid in doing so from Children's Services Division

[69]

(CSD). The father also continued to request visitation, although sporadically, during the time the child was in foster care. From these findings the court concluded that the father had shown a continuing interest in the child and had made an effort to adjust his circumstances to make possible the return of the child to the home. The court found the father was not at fault for his failure to make a lasting adjustment. The court further found that for a substantial period CSD had given the father no supportive services. In commenting on a letter from a CSD caseworker to the father containing a series of ultimatums regarding actions the father must take to avoid termination proceedings, the court stated that the plan was one which perhaps a lawyer, judge, or juvenile court counselor might be able to understand and act upon, but that in light of the McDaniels' limitations it was reasonable for them to "sit back and wait for things to happen." Rodney McDaniel, Kathy's father, has an eighth grade education. In school he was assigned to a class for the educable mentally retarded (I.Q. 70-85). He is occupationally disabled due to his mental deficiency, and supports his family on Social Security and public assistance grants from the state. Patty McDaniel, Kathy's stepmother, did not finish high school.

We agree with the trial court that the father lacked support from CSD in obtaining the marital and parenting skills he would need for a successful return of the child to the home. CSD did cooperate in arranging visitation, although visitation was hindered by the distance the father and child lived from each other and the CSD offices. We also agree that the father has made an effort to adjust his circumstances. Our review of the evidence convinces us, however, that no amount of effort by CSD and cooperation by the father would offer any reasonable possibility that the child could be permanently reintegrated into the home.

The statutory requirement that available social agencies (here CSD) make "reasonable efforts" to help

the parent make a lasting adjustment could not have been intended by the legislature as a justification for penalizing the child for CSD's lapses. We refuse so to apply it, particularly in this case when the father, although possessing low intelligence, has shown the ability to seek and find help on his own. Some of the parenting classes and counseling occurred prior to the second of the two placements of the child in the father's home, which failed abysmally, ending after less than three months when the father returned Kathy and one of his other daughters to CSD and insisted that CSD place them in foster care.[3]

Kathy, who was 10 at the time of the hearing, has found a loving, supportive, and family-oriented home with her foster family, and strongly desires to be adopted by her foster parents. Since being placed in that home she has shed her behavioral problems and has made unusually rapid and unexpected improvements in her intellectual development, disproving her earlier rating as mentally retarded. Kathy's foster parents also wish to adopt her. Kathy has but a "far away attachment" to her father, has fearful memories of his home, and does not desire to live with him and her stepmother.

This is not a case such as *State ex rel Juv. Dept. v. Wyatt,* 34 Or App 793, 579 P2d 889, *rev den* (1978), in which fairness dictates that we give the father one more chance to prove his ability as a parent. In this case, delay in terminating the father's parental rights would serve no useful purpose.

Reversed.

---

[3] In December 1978, Rodney McDaniel relinquished his parental rights to his two other daughters, Gina and Cheri. The record suggests that he was motivated in part by a desire to rid himself of responsibility for support payments for those children.