Argued and submitted September 3, affirmed September 4,
reconsideration denied September 14,
petition for review denied September 15, 1981 (291 Or 662)

In the Matter of Sara Helen Jensen,
a Child.

STATE ex rel JUVENILE DEPARTMENT
OF LINN COUNTY et al,
*Respondents.*

*v.*

JENSEN et al,
*Appellants.*

(No. CA A21918)

633 P2d 1302

Brian P. Jackson, Albany, argued the cause and filed the brief for appellants.

James E. Mountain, Jr., Deputy Solicitor General, Salem, argued the cause for respondent State of Oregon, ex rel Juvenile Department of Linn County. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

John P. Meynink, Jr., Albany, argued the cause and filed the brief for respondent Sara Helen Jensen.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

The parents of a 15-month old child appeal from the juvenile court's order that the child is within its jurisdiction and directing that the child be placed in the legal and physical custody of the Children's Services Division (CSD) and that CSD "obtain and provide medical care and other special treatment to [the child] for the condition of hydrocephalus, such treatment to include but not be limited to a surgical operation." We review *de novo* and affirm.

The parents are members of "The General Assembly and Church of the First Born" and have raised their children as members of that church. Principles of their religious beliefs include that members of the church may not accept medical treatment or professional health care and that disease is to be treated by "prayer over the ailing by church elders."

The child suffers from hydrocephalus, a condition in which fluid is retained in the cranium and in which the head becomes abnormally enlarged. If untreated, the condition often causes severe mental and physical effects, including increasing pressure on the brain and reduced brain function. In the present case, the child's head has grown at an accelerated rate, and the child is unable to sit up or to hold her head up unaided. The child has symptoms which evidence increasing pressure on the brain, but her life is not in immediate danger. However, if the condition is not treated, there is a substantial likelihood of retardation and other problems, and the possibility of the child leading some semblance of normal life would be very small.

The recommended treatment for hydrocephalus is a surgical shunting procedure in which plastic tubing is inserted into a hollow area of the brain to drain the fluid into other body cavities. Once the tube is inserted, the child will become dependent on the shunt. As the child grows, the tube will have to be adjusted to accommodate the child's growth. This will entail three or four additional surgeries during the child's lifetime. If performed, that procedure would prevent further deterioration and enable this child to develop intellectually and to lead a more normal life. The surgery is not a high-risk procedure, although there is a

statistical possibility of brain collapse. The risk of post-surgical complications increases the longer surgery is delayed.

The parents refused to consent to the surgical procedure, and this proceeding was initiated. The initiating petition alleged that the child is within the jurisdiction of the court because "said child's conditions and circumstances are such as to endanger her welfare."

The parents make three contentions on appeal, all of which relate to the constitutionality of ORS 419.476(1)(c) and 419.500(1). ORS 419.476(1)(c) provides:

"(1)  The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"(c)  Whose behavior, condition or circumstances are such as to endanger his own welfare or the welfare of others; * * *"

ORS 419.500(1) provides:

"The facts alleged in the petition showing the child to be within the jurisdiction of the court as provided in subsection (1) of ORS 419.476, unless admitted, must be established by a preponderance of competent evidence. However, in the adjudicative phase of a hearing where a finding of jurisdiction may result in institutionalization under subsection (1) of ORS 419.509, the facts must be established beyond a reasonable doubt. The practice of a parent who chooses for himself or his child treatment by prayer or spiritual means alone shall not be construed as a failure to provide physical care within the meaning of ORS 419.472 to 419.597, 419.800 to 419.840 and subsection (2) of 419.990 but shall not prevent a court of competent jurisdiction from exercising that jurisdiction under paragraph (c) of subsection (1) of ORS 419.476. The court, on motion of an interested party or on its own motion, may at any time direct that the petition be amended. If the amendment results in a substantial departure from the facts originally alleged, the court shall grant such continuance as the interests of justice may require."

The parents' first argument is that these statutes are unconstitutionally vague. Their second contention is

that the statutes, as applied, violate their right to the free exercise of religion under the federal and state constitutions. Their final argument is that the preponderance of the evidence standard of proof under ORS 419.500(1) denies them due process and that a higher standard of proof is required.

## VAGUENESS

The parents argue that the language of ORS 419.476(1)(c), in combination with the provision of ORS 419.500(1) that treatment by prayer or spiritual means alone does not constitute a failure to provide physical care, creates an impermissibly vague standard which (1) does not adequately warn what conduct is proscribed, (2) allows arbitrary and discriminatory enforcement and (3) inhibits free exercise of religion.[1]

In *State v. McMaster,* 259 Or 291, 486 P2d 567 (1971), the Supreme Court upheld ORS 419.523(2), which provides for termination of parental rights if parents are found to be "unfit by reason of conduct or condition seriously detrimental to the child," against a vagueness challenge. The court stated that the statutory language referred to "conduct substantially departing from the norm," 259 Or at 304, and held that the statute gave sufficient notice of proscribed conduct and adequately controlled the discretion of the juvenile court. The Supreme Court also noted that it would have been extremely difficult for the legislature to draft a more precise statute to accomplish its purpose of protecting the child's welfare. The court said that "[w]hat might be unconstitutional if only the parents' rights were involved is constitutional if the statute adopts legitimate and necessary means to protect the child's interests." 259 Or at 296.

Although *McMaster* involved termination of parental rights, the language of the opinion is instructive

---

[1] We assume for the purposes of analysis, but do not decide, that a noncriminal statute is subject to constitutuional challenge because of vagueness. *See Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980).

in analyzing the statute involved in this case. The language of ORS 419.476(1)(c) is no less precise than that of the termination statute construed in *McMaster.* We hold that the language is precise enough to give adequate notice to the parents and to guide the court's discretion in this situation where serious and irreparable brain damage may result from not performing a commonly prescribed medical procedure which involves little risk and carries a high probability of alleviating the threatening condition.

■ We therefore do not agree with the parents that ORS 419.476(1)(c) is impermissibly vague. We also disagree that the language of ORS 419.500(1) to which they refer injects vagueness into the statutory scheme. The relevant portion of that statute states:

> "* * * The practice of a parent who chooses for * * * his child treatment by prayer or spiritual means alone shall not be construed as a failure to provide physical care * * * *but shall not prevent a court of competent jurisdiction from exercising that jurisdiction under [ORS 419.476(1)(c)].* * * *" (Emphasis added.)

In context, the statutory language clearly does *not* mean that the court is powerless to intervene under ORS 419.476(1)(c) when a child's health is seriously jeopardized by a parent's preference for spiritual rather than medical treatment. We need not attempt in this case to draw the line where serious jeopardy begins, or to determine whether the location of that line is left so obscure by the statute that reasonable persons cannot identify it. This case is not close to the line. The difference between providing and not providing indicated medical treatment here, as far as human beings can know, may well be the difference between providing or denying the child an opportunity to enjoy a meaningful life.

## FREE EXERCISE OF RELIGION

The parents argue that ORS 419.476(1)(c) and 419.500(1), as applied by the juvenile court, violate their "constitutionally protected rights to family integrity, privacy and freedom to practice religion." They claim that the juvenile court's action in this case is an unconstitutional interference with their parental rights to provide for the care and custody of their child and that any state-enforced

medical treatment of their child violates their First Amendment right freely to practice their religion.[2] The parental rights and religious freedom claims are so interrelated that they present a single claim in this case.

In *Prince v. Massachusetts,* 321 US 158, 64 S Ct 438, 88 L Ed 645, (1944), the United States Supreme Court, citing *Pierce v. Society of Sisters,* 268 US 510, 45 S Ct 571, 69 L Ed 1070, 39 ALR 468 (1925), stated:

> "* * * It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder. * * *" 321 US at 166.

*Prince* and *Pierce* are seen as a "charter of the rights of parents to direct the religious upbringing of their children." *Wisconsin v. Yoder,* 406 US 205, 233, 92 S Ct 1526, 32 L Ed 2d 15 (1972).

While the parents' right to provide religious training for their children is constitutionally protected, that right does not include as a necessary adjunct the right to jeopardize their children's health or safety. As the court stated in *Prince:*

> "* * * Parents may be free to become martyrs themselves. But it does not follow they are free, in identical circumstances, to make martyrs of their children before they have reached the age of full and legal discretion when they can make that choice for themselves. * * *" 321 US at 170.

The line cannot always be easily drawn between the parental right to provide religious foundation for their children's lives and the right of children either to reject or to be free of unwanted consequences of their parents' faith. *Cf. Wisconsin v. Yoder, supra.* Presumably, no court would prohibit a parent from compelling a recalcitrant six-year old to attend Sunday School; presumably no court would hesitate to enjoin the sacrifice of a child to a volcano god. This case is not at either end of that spectrum. However, we

---

[2] The parents also contend that Art I, § 3 of the Oregon Constitution is a source of these same rights. We consider the same factors to be dispositive of the federal and state constitutional claims.

conclude that given the child's inability to make her own choice about the burdens she will sustain as a consequence of her parents' religious belief, this burden the parents would impose on her in the interest of faith exceeds the limits of their asserted religious and related family rights.

■    The parents acknowledge that their religious rights would have to "defer to a *parens patriae* doctrine when life is endangered." They contend, however, that the same is not so "when there is not a life endangering situation." While we agree that not all events are equally grave, and that competing claims of First Amendment liberties and the state's *parens patriae* role must obviously be weighed in light of the gravity of the risk against which the state seeks to act, we do not agree that the risk to the child in this case differs significantly in magnitude from an immediate threat to life. The facts as we find them are that the most basic quality of the child's life is endangered by the course the parents wish to follow. Their rights must yield.

## STANDARD OF PROOF

■    The parents contend that their due process rights are violated in that ORS 419.500(1) requires proof only by a preponderance of the evidence in order to establish the juvenile court's jurisdiction under ORS 419.476(1)(c). We do not agree that a higher standard of proof is constitutionally required.

The preponderance of the evidence standard of proof has been held constitutionally adequate in parental rights termination proceedings. *State ex rel Juv. Dept. v. K.M.S.,* 26 Or App 219, 552 P2d 578, *rev den* 276 Or 133 (1976); *State ex rel Juv. Dept. v. P.J.P.,* 26 Or App 215, 552 P2d 584, *rev den* 276 Or 133 (1976), *appeal dismissed* 430 US 901 (1977). We decline to hold that a standard of proof is required here higher than in termination cases.

On *de novo* review, we are satisfied that the facts necessary to place the child within the juvenile court's jurisdiction under ORS 419.476(1)(c) have been established beyond a reasonable doubt.

Affirmed.