Argued and submitted August 28, 1981, affirmed February 8,
reconsideration denied March 11,
petition for review allowed April 6, 1982
292 Or 822, 642 P2d 1167

In the Matter of Farrell, Sonya, Jennifer,
Minor Children.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

DEBORAH FARRELL,
*Appellant.*

(No. 56,839, CA 19784)

640 P2d 652

James F. O'Rourke, Jr., Portland, argued the cause for appellant. On the brief was John S. Marandas, Portland.

Richard David Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Richardson and Warren, Judges.

RICHARDSON, J.

## RICHARDSON, J.

This is an appeal by mother from an order terminating her parental rights to her two daughters. She contends that: (1) the relevant statute (ORS 419.525(2)) is unconstitutionally vague; (2) the court erred in applying a preponderance of the evidence test; (3) the court erred in denying her a jury trial; (4) the court abused its discretion in not allowing a continuance; (5) the judge erred in refusing to disqualify himself; and (6) the court erred in terminating her parental rights. We review de novo, ORS 419.561(4), 19.125(3), and affirm.

The marriage of mother to the father of the children was dissolved, and father voluntarily relinquished his parental rights. The children, Sonya, age four, and Jennifer, age three, are wards of the court and are in the physical custody of the paternal grandparents.

Sonya was born, prematurely, on January 3, 1976. The parents wanted to take the child home immediately against medical advice, and the hospital obtained an order of temporary wardship in order to keep the child at the hospital. In May, 1977, she was returned to the hospital because of malnutrition, developmental delay and failure to thrive.

Jennifer was born on September 18, 1977. In February, 1978, she also was hospitalized due to a failure to thrive. At the age of five months, she weighed only eight pounds five ounces. She was released from the hospital to the custody of her paternal grandparents. Both children have been wards of the court and in the physical custody of the grandparents since their release from the hospital.

The order making Jennifer a ward of the court and committing her to the custody of Children's Services Division (CSD) directed the parents to submit to psychological examinations and attend parenting classes. At first the parents were uncooperative, but after they separated, mother's attitude and motivation appeared to improve. She attended the parenting classes and visited the children. The first CSD caseworker in charge of the case made a determination early in the processing of the case that parental termination was warranted. This preliminary

determination was passed on to caseworkers who subsequently assumed responsibility for the case.

We first discuss mother's contention that the evidence does not support termination of her parental rights. The petition alleged that the mother of the children "* * * is unfit by reason of conduct and conditions seriously detrimental to the above named children and integration of the children into the home of the mother is improbable in the foreseeable future due to conduct and conditions not likely to change * * *." Our review of the extensive record satisfies us the trial court properly terminated mother's parental rights.

It is clear that at the time the children were made wards of the court they had not received minimally adequate care, and their mental and physical health was in serious jeopardy. Had the children been returned to the parents under the same conditions, it is doubtful the children would have survived. Although mother, following her separation from the children's father, cooperated with the social agencies involved and attended parenting classes, the evidence indicates that she showed little improvement in her basic parenting skills.

Mother's lack of improvement is due in large measure to her limited intellectual capacity and her psychological makeup. A psychologist called by the state concluded that it was very unlikely she could learn to be a minimally adequate parent, even with substantial assistance from available social agencies. A psychologist testified on behalf of mother that in his opinion she could become an adequate parent if she received the right kind of assistance. That optimistic appraisal is diluted by the fact that mother showed little improvement in her parenting skills and her ability to put into practice the things she was taught in the parenting classes. ORS 419.523(2)(e) implies an obligation on the state to provide assistance through social agencies to reintegrate children into the home. However, that obligation does not require the state to provide continual assistance in the nature of surrogate parenting to assure minimally adequate care for the children. It appears that mother will be unable to put into practice the basic skills necessary to care for the children. The welfare of the children in

mother's home should not depend on the availability of agency assistance to the degree that would be necessary for adequate care.

Mother argues that because CSD made an early decision to terminate her parental rights, it offered only minimal assistance to her and frustrated her attempts to become an adequate parent. In her brief, mother attacks CSD for what she considers inadequate assistance to her in reintegrating the children into her home or in learning basic parenting skills. The separate orders · making the children wards of the court and committing them to CSD's custody were signed by different judges. Each judge recommended that the situation be immediately evaluated for termination of parental rights. The CSD caseworker in charge of the cases adopted the courts' recommendations and made an early decision that termination of parental rights was indicated.

When a child is placed in the custody of CSD because of conditions in the home detrimental to the child, CSD plays a dual role. It must look after the welfare of the child and also must assist the parents in alleviating the conditions that were harmful to the child. CSD is not necessarily an advocate for the child, and the two roles are not necessarily inconsistent. The best interests of the child may dictate reintegration of the child into the parent's home. In any event, CSD does not make the decision terminating parental rights; that is a judicial decision.

■ ■ If CSD does not adequately meet its obligation of assistance to the parents, the court may conclude that termination is not warranted, because with adequate assistance the parents could make adjustments necessary to provide an adequate home for the children. Conversely, it may be determined that, even were there appropriate assistance from social agencies, the parents would not be able to become adequate parents. A termination proceeding does not result in a penalty or reward for CSD; the controlling issue is the welfare of the children involved. *See State ex rel Juv. Dept. v. McDaniel,* 46 Or App 65, 610 P2d 321 (1980). The evidence persuades us that even with substantial assistance from available social agencies it is unlikely that mother would become a minimally adequate parent.

■ Mother contends her rights to procedural due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution were violated by application of the preponderance of the evidence standard. ORS 419.525(2) provides that a petition for termination of parental rights must be proved by a preponderance of the evidence. In *State ex rel Juv. Dept. v. K.M.S.*, 26 Or App 219, 552 P2d 578, *rev den* 276 Or 133 (1976), we concluded that the standard of proof specified by ORS 419.525(2) was constitutional. Mother argues that that decision must be reexamined in light of *Addington v. Texas*, 441 US 418, 99 S Ct 1804, 60 L Ed 2d 323 (1979), which held that the preponderance of the evidence standard in an involuntary civil commitment proceeding violates due process of law.

The rationale of the decision in *Addington* was that an alleged mentally ill person who was the subject of a petition for involuntary commitment had an interest in personal liberty that was greater than the state's interest in treatment for the mentally ill. Because the interest of the state is less than that of the individual, the risk of an erroneous factual decision should fall more heavily on the state. The court determined that proof by clear and convincing evidence properly allocated the risk of error.

· In a proceeding to terminate parental rights, the parents' interest in maintaining their parental rights is not predominant. The child has at least an equal interest to be free from harm in the home environment. The proceeding does not simply involve a contest between the parents and the state to take away parental rights; the welfare of the child is involved. If a standard greater than a preponderance of the evidence were imposed, the risk of an erroneous decision would fall most heavily on the party the proceedings are primarily designed to protect. The considerations that prompted the decision in *Addington* are not present in a termination of parental rights proceeding. *Addington* does not mandate reexamination of our earlier decision.

■ Mother contends that ORS 419.523, which provides the criteria for termination of parental rights, is unconstitutionally vague. She argues the statute does not inform parents what level of performance is required to maintain their parental rights. In *State v. McMaster*, 259 Or 291, 486

P2d 567 (1971), the court upheld the former termination of parental rights statute against a similar challenge. The present statute (ORS 419.523) is more specific than that reviewed in *McMaster.* It follows that mother's vagueness challenge fails. *See also, State ex rel Juv. Dept. v. Jensen,* 54 Or App 1, 633 P2d 1302, *rev den* 291 Or 662 (1981).

Mother next claims she is entitled to a jury trial. We ruled otherwise in *State ex rel Juv. Dept. v. F.S.,* 26 Or App 209, 552 P2d 586, *rev den* 276 Or 211 (1976).

■        The next claim of error is that the court abused its discretion in denying mother's motion for a continuance. The case was scheduled for trial on Monday, October 27, 1980. On the previous Friday, mother moved for a continuance based on her attorney's affidavit that he had not had sufficient time to complete discovery or review the numerous documents associated with the case. Counsel had been appointed for mother on July 18, 1980. The court denied the motion at that time but, at the close of the state's presentation of evidence, continued the trial for approximately a month so that counsel could conduct further discovery, depose witnesses and review the evidence presented by the state. Mother argues that she was unprepared to proceed and was denied a meaningful opportunity to confront the state's witnesses because her counsel was not adequately prepared to cross-examine the witnesses. When the trial was resumed, after the long continuance, mother was given the opportunity to recall any witness for cross-examination. She recalled one state's witness. Under these circumstances, we conclude that the court did not abuse its discretion in denying the motion for continuance.

■        Mother's final contention is that the court erred in denying her motion to disqualify the trial judge. After the case had been assigned for trial and after the ruling on mother's motion for a continuance, she moved to disqualify the trial judge. We conclude that the motion was not timely and was properly denied. ORS 14.270 provides, in pertinent part, that "[n]o motion to disqualify a judge to whom a case had been assigned for trial shall be made after the judge has ruled upon any petition, demurrer or motion other than a motion to extend time in the cause, matter or proceeding

* * * ." At the time the motion to disqualify was made, the case had been assigned to a particular judge, who had ruled on mother's motion for a continuance. A motion for continuance is not synonymous with a motion to extend time. The latter motion seeks to extend a particular date for performance of any required act relating to the proceeding; for example, extending the time for filing a response. A motion for continuance seeks to recess a proceeding already commenced. The proceeding had commenced with the assignment of the case for trial and the appearance of the parties before the assigned judge. The first order of business was mother's motion to postpone the hearing. The motion to disqualify the judge was not timely.

Affirmed.