Argued and submitted June 28, 1982, affirmed in part, modified in part and remanded March 16, 1983

In the Matter of the Marriage of

TUTTLE,
*Appellant,*
*and*
TUTTLE,
*Respondent.*

(81-250-NJ-3; CA A22928)

660 P2d 196

William G. Carter, Medford, argued the cause for appellant. With him on the brief was Grant, Ferguson & Carter, Medford.

Frank R. Alley III, Medford, argued the cause for respondent. With him on the brief was Heffernan, Fowler, Alley & McNair, Medford.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Mother appeals the provision of a dissolution decree awarding custody of the parties' children to father. She also asks that the requirement that she pay child support be deleted and that she be awarded the sum of $200 per child per month. The record consists primarily of the testimony of father, mother and Dr. Lynch, a clinical psychologist, and a written evaluation of the parties, the children and mother's fiance prepared by Dr. Lynch. We review *de novo* and modify the award of custody.

The parties were married in 1967. At the time of the decree, mother was 34 years old, father was 36. Both are competent and loving parents. Their children, Christine, age ten, and Andrew, age six, are healthy and friendly and are doing well in school. They love their parents and feel loved by them, although they have experienced considerable stress because of the divorce. Mother is the "primary parent" and has had custody during the separation. Christine wants to remain with her; Andrew does not want to lose either parent. Mother has established a relationship with Terry Tracy, an E-5 in the Air Force, who works as a management analyst at Edwards Air Force Base in California. The parties dispute whether mother's moving there and marrying him, should either event occur, would be detrimental to the children.

Tracy has two children, ages eight and six, from a previous marriage. Both live with their mother. Dr. Lynch testified:

"* * * As far as [Tracy's] relationship with Christine and Andrew they seem to be close, they seemed to enjoy each other's company, and he seems to be a good friend. *I don't see him as potentially dangerous to the children in any way, in fact, he seems to be, as reported by everyone I have asked as far as the investigation to me or workers or a couple of referral sources that I called, that he is a good father,* was to his own children, and he loves children. * * *

"* * * * *

"* * * As far as personality profile, he seemed to be well adjusted. *I could not find anything on the profile to show him to be a severe problem of any kind.* He had two years of college and he continues to take night classes or going to

be taking night classes to finish his degree. He shows initiative on his own that way, and the profile also backs that up. *He shows that he is able to maintain deep relationships, significant relationships with people, to maintain work status and do well in the job, to be adjustable, and to be fairly balanced overall.* That is his sociability, outgoing, basically accepting others, and I guess that also being for why he did well as a recruiter, he was very open and gregarious. That is the overall view." (Emphasis supplied.)

Tracy has, in the past, tended to abuse alcohol when under stress. Before trial, he had become involved in an Air Force rehabilitation program and had reduced his drinking. Dr. Lynch's "only concern" was that Tracy continue working to resolve the problem. He explained that Tracy is not an alcoholic and would not "injure the children." He concluded that Tracy "has a good relationship going, * * * is pretty much determined" and is going to resolve his drinking problem, although he also stated that it was "impossible for whoever you are working with to know what is going to happen in the first few years." As noted by the trial court, father has also had to overcome a tendency to react inappropriately to stress:

"Some of the greater concern initially about Mr. Tuttle was his behavior during the months following the separation. He handled that period poorly at times making derogatory comments about the mother in front of the children, making comments about suicide or about killing Mrs. Tuttle's boyfriend, and generally seemed to allow his emotions to dominate his actions for awhile. On the other hand, he took none of the action threatened at all and it appears to the Court, and the Court finds, that this was simply an acting out of extreme frustration and concern about the break-up of the marriage and that he in fact is not a person who is at all likely to take any extreme action. Moreover, it appears now that he has accepted the idea of divorce, has established a relationship with another woman and is in a position to proceed with the responsibility of being a good father."

The children would not mind moving to California and to some degree look forward to living in a new place. Their grandparents live there, relatively close to Tracy's base. According to Dr. Lynch, a move to the base would be a source of stress because of the "totally different lifestyle

up here." New schools, new peers and a new neighborhood would require adjustment. Dr. Lynch also testified that, should father follow through with his plan to enroll the children in Grace Christian School in Medford, the adjustment would be equivalent to attending a new school in California. He predicted that "going to either place they are going to do okey *[sic]* and make new peer friends."

ORS 107.137 provides, in pertinent part:

"(1) In determining custody of a minor child pursuant to ORS 107.105 or 107.135, the court shall give primary consideration to the best interests and welfare of the child. In determining the best interests and welfare of the child, the court may consider the following relevant factors:

"(a) The emotional ties between the child and other family members;

"(b) The interest of the parties in and attitude toward the child; and

"(c) The desirability of continuing an existing relationship.

"(2) The best interests and welfare of the child in a custody matter shall not be determined by isolating any one of the relevant factors referred to in subsection (1) of this section, or any other relevant factor, and relying on it to the exclusion of other factors.

"* * * * *"

Mother is the children's "primary parent", *i.e.*, she has provided nurturing and has taken care of their basic needs. As Dr. Lynch testified:

"* * * [O]ver the period of time [mother] has been the primary parent of both children. A lot of this is due to the work situation, a lot to do with when for example going to work, basically more it is often a characteristic of our family relationship in this culture. It has become less so I think in the past few years in the marriage because both work and both spend time with the children. *I think she has a slight edge as the primary parent.*" (Emphasis supplied.)

The identity of the primary parent is a relevant and important consideration in custody decisions. *See* ORS 107.137(1)(b); *Van Dyke and Van Dyke,* 48 Or App 965, 969-70, 618 P2d 465 (1980), *rev den* 290 Or 491 (1981).

Although not dispositive, it is particularly significant in this case because of the ages of the children. *See Derby v. Derby,* 31 Or App 803, 806-07, 571 P2d 562, *modified on other grounds,* 31 Or App 1333, 572 P2d 1080 (1977), *rev den* 281 Or 323 (1978) (involving daughter, age nine, and son, age five).

■   It is likewise relevant that mother has had custody of the children since the parties' separation in January, 1981. The divorce has been stressful for the children. Dr. Lynch reported that Christine has cried in his office "because of the conflicts" and has had "stomach problems," that Andrew "is showing a lot of anxiety" and that they are "frightened and very concerned." Father does not challenge Dr. Lynch's conclusion:

> "* * * The children have grown to be accustomed to the mother more over the stress period of the last eight months due to the frequency they have been with her. They have had to already adjust to the loss of their father, they haven't adjusted to it easy, well, they, don't like it, but they also are aware of the fact that in the interim he has stayed very active on weekends with them as much as he could, but *they still have grown more accustomed to this security of the mother.*" (Emphasis supplied.)

Under these circumstances, it is desirable to continue this relationship. ORS 107.137(1)(c). *See Ellenwood and Ellenwood,* 20 Or App 486, 489-91, 532 P2d 259 (1975). *See also Derby and Derby, supra.*

■   In part for the same reasons, Christine's desire to remain with her mother is to be taken into account in determining the custodial arrangement. *See Padbury and Padbury,* 46 Or App 533, 537, 612 P2d 321 (1980); ORS 107.137(1)(a). Dr. Lynch asked Christine why she wanted to live with her mother, and he describes her response as follows:

> "* * * [S]he said because she loved her mother, she loved her mother and father, she loved both of them the same, but that her mother had become pretty much her symbol of security and stability, and a lot of that is also due to the last eight months that she has been with her mother through the whole crisis situation and it frightens her now to also have to think of the concept of losing that stability, to go to the dad, and now losing mom, and it's not that she

loves one or the other, but the consistency and stability has been pretty much developed for her plus I think she communicates more with her mother * * *."

Notwithstanding these considerations, the trial court awarded custody to father. The court reasoned that, although mother had a "slight edge" as the parent to whom custody should be awarded,

"* * * the upheaval, uncertainties and stress involved in the multiple moves and the uncertain quality of the family that would be established more than offset the slight edge that Mrs. Tuttle enjoys as a parent * * *."

■ We disagree. The trial court gave insufficient weight to mother's role as primary parent and Christine's preference to stay with her and effectively omitted consideration of the bond maintained between mother and children since the separation. It is clear that, when these factors are considered and accorded appropriate weight, mother has considerably more than the "slight edge" attributed to her by the trial court. Furthermore, given the ages of the children and the other circumstances, we conclude that those factors more than outweigh any unsettling effects of mother's potential remarriage and move to California, which the trial court tended to isolate to the exclusion of the factors discussed above, see ORS 107.137(2), and which are, for the most part, speculative.

Therefore, we conclude that the best interests of the children require that custody be awarded to mother, subject to reasonable and liberal visitation rights in father, to be established by the trial court on remand. We likewise leave to the trial court the determination of child support. *Smith v. Smith,* 290 Or 675, 626 P2d 342 (1981).

Dissolution affirmed; decree modified as to custody; remanded for determination of visitation and child support. Costs to appellant.