**In the Matter of Pamela I. HAMILTON.**

**STATE of Tennessee, DEPARTMENT OF HUMAN SERVICES, Plaintiff-Appellee,**

v.

**Larry T. HAMILTON, Defendant-Appellant.**

Court of Appeals of Tennessee, Eastern Section.

Sept. 21, 1983.

Permission to Appeal Denied by Supreme Court Sept. 29, 1983.

James A.H. Bell, Knoxville, for defendant-appellant.

Joe Coker, Jacksboro, Guardian ad litem for Pamela I. Hamilton.

Michael E. Terry, Deputy Atty. Gen., Nashville and Diane Stamey, Asst. Atty. Gen., Nashville, for plaintiff-appellee.

## OPINION

PER CURIAM.

In this action, instituted by the Department of Human Services of the State, the

trial judge declared Pamela I. Hamilton, age 12, a dependent and neglected child within the meaning of T.C.A. § 37–202(6)(iv)[1] on the ground that her natural guardian, her father, had refused to provide necessary medical care for the child. The father has appealed.

Due to the exigencies of the situation, we have suspended certain requirements of the Tennessee Rules of Appellate Procedure, as authorized by T.R.A.P., Rule 2, but have received briefs and oral arguments have been heard.

Following an evidentiary hearing, the trial court determined:

> The Court finds that Pamela Hamilton is a dependent and neglected child under Tennessee Code Annotated 37–202(6)(iv) and that her legal guardian, her father, has refused to provide necessary medical care for his child, Pamela.

> In the Court's opinion, the medical proof shown through the witnesses, the depositions, is that Ewing's Sarcoma will spread when untreated, that there is a twenty-five (25%) to fifty (50%) percent chance to successfully deal with the Ewing's Sarcoma on a long-term basis when localized, as I believe the evidence indicates Pamela's presently is; that there is less than twenty-five (25%) percent chance of living with treatment when cancer has spread. . . .

> (T)here is undisputed and uncontradicted testimony that without treatment Pamela will die within six (6) to nine (9) months. That is to say that medical care is necessary and available which can deal within certain bounds with Ewing's Sarcoma and that medicines are available and are necessary for her pain. . . .

The evidence does not preponderate against the trial court's fact finding; however, where the State undertakes to deny the rights of parents and their children, due process requires that the State support its charges by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The findings of the trial court are supported by clear and convincing evidence except his conclusion that the sarcoma has not metastasized.

Dr. Elizabeth I. Thompson, an examining physician and member of the staff of St. Jude Children's Research Hospital furnished the court with a concise summary of Pamela's prognosis with treatment:

> Because of the site, interval progression of this tumor since diagnosis and questionable bone scan the long-term prognosis for this patient is very guarded. If she truly has tumor in the vertebral body, her chances of long-term remission with chemotherapy and radiation are less than 25%. If the vertebral lesion on bone scan is not tumor, the best estimate I could give of long-term remission is 25–50%. Her chance of temporary response and pain relief is, of course, much higher—at least 80%.

Appellants, however, do not seriously question the medical evidence but base their objections to medical treatment, including medication to combat pain, on religious grounds, relying on the First Amendment to the Constitution of the United States for the protection of the free exercise of their religious convictions. The members of the appellant's family are members of a Protestant religious sect, The Church of God of the Union Assembly, Incorporated, which, according to the father, himself a lay minister, has churches in Arizona, Texas, Mississippi, Alabama, Ohio, Illinois, Kentucky, North Carolina, South Carolina, Tennessee, and Georgia. A tenet of the church is:

> All members of the church are forbidden to use medicine, vaccinations or shots of any kind but are taught by the church to live by faith.

---

1. T.C.A. § 37–202(6)(iv)

   (6) "Dependent and neglected child" means child

. . . . .

   (iv) Whose parent, guardian or custodian neglects or refuses to provide necessary medical, surgical, institutional or hospital care for such child.

Apparently, medical treatment such as suturing wounds, extracting teeth, and setting fractured bones does not fall within the prohibition; indeed, Pamela was treated by an orthopedic surgeon for a fracture of her femur which led to the discovery of the affliction, Ewing's Sarcoma. The father, despite his protestations, is pragmatic if not enlightened in his approach to medical treatment. His expressions to the trial court are revealing. In response to questions about reaching his decision to forego medical treatment for his daughter, he said:

Q. Will you tell us what kind of soul searching you've gone through in reaching your decision?

A. She does not want it. . . . .

Q. . . . Do you have an opinion yourself in terms of the medical treatment?

A. Well, if they're going to give you something to make you sick and your hair come out, it must not be too good for you. If they can't guarantee it to heal you, why do it, because if a doctor were to tell me he had a medicine that would heal me I'd go right there in just a minute, but there ain't none.

The beneficial effects of modern medicine are beyond serious enlightened dispute. Beginning around 1970 noted cancer treatment centers, such as Memorial Sloan-Kettering, Duke, Anderson, and Saint Jude, employing combined radiation and chemotherapy treatments, have succeeded in establishing long term remission of tumors in a significant number of patients suffering from Ewing's Sarcoma.

While the prognosis with treatment in Pamela's case is guarded, the consequences of no treatment is certain, painful death in six to nine months according to medical opinion.

Accordingly, the issue[2] thus becomes whether the father may refuse to procure recognized, and widely accepted medical treatment which has proven effective in numerous cases for this affliction on religious grounds.

Appellant cites *Superintendent of Belchertown v. Saikewicz,* 373 Mass. 728, 370 N.E.2d 417 (1977), as authority for an incompetent individual not being subjected to medical treatment involving chemotherapy. The case is not applicable. In *Saikewicz* all of the attending physicians recommended against this form of treatment for the patient.

Appellee cites four cases in which the Court ordered treatment despite the resistance of the child's parents to the treatment. In *Mitchell v. Davis,* 205 S.W.2d 812 (Tex. Civ.App.1947), the mother was charged with criminal neglect for failure to provide treatment for her son's arthritic knee condition, a non-life-threatening ailment. The mother defended on the ground that she considered healing only possible through prayer. The Court held that this religious belief of the mother did not constitute a defense to the charge of neglect.

In *Custody of A Minor,* 375 Mass. 733, 379 N.E.2d 1053 (1978), the parents stopped the treatment of their two-year-old daughter suffering from leukemia because of the adverse side effects of the treatment. No religious argument was raised. The Court ordered the treatments to resume. The court balanced the interests of (1) the natural rights of parenthood; (2) the responsibility of the state; and (3) the needs of the child. The Court then reached the conclu-

---

**2.** Appellant raises the constitutionality of T.C.A. § 37–228 for the first time on appeal. The issue is not properly reviewable. *Sutton v. Bledsoe,* 635 S.W.2d 379 (Tenn.App.1981). Moreover, appellant misconstrues the statute. The language of the Act clearly expresses the Legislature's intent to require necessary medical treatment for a child not-withstanding the state of mind of the parents.

The Appellant also insists by another issue that the Trial Court erred in failing to recuse himself because of opinions expressed prior to a full evidentiary hearing. Conceding for the purpose of argument that the statement was improperly made, because there has been a *de novo* review in this Court and our finding of clear and convincing evidence was not based upon any issue of credibility resolved by the Trial Court, we believe this error was harmless as contemplated by Rule 36 of the Tennessee Rules of Appellate Procedure.

sion that when the child's life is endangered, the state's interest in protecting the life of the child always outweighs the parental interests.

In *Matter of Jensen,* 54 Or.App. 1, 633 P.2d 1302 (1981), the parents refused treatment on religious grounds of the child's condition of hydrocephalus. The child faced the possibility of severe brain damage, but her life was not in immediate danger. The Court ordered treatment for the child, holding that, although the parents are free to provide religious training to their child, that right does not include the right to jeopardize the child's health.

In the case of *People In Interest of D.L.E.,* 645 P.2d 271 (Colo.1982), a 14-year-old's life was in danger because of failure to treat a grand mal epileptic condition. A Colorado statute prohibited a finding of neglect if the child was in good faith "under treatment solely by spiritual means through prayer." The parents objected to treatment on religious grounds. The Colorado Supreme Court found that in a life-threatening situation the child was dependent and neglected, despite the statute.

■ Pamela has not reached the age of accountability and it is well-settled that the state as *parens patriae* has a special duty to protect minors and, if necessary, make vital decisions as to whether to submit a minor to necessary treatment where the condition is life threatening, as wrenching and distasteful as such actions may be. *See State Dept. of Human Services v. Northern,* 563 S.W.2d 197 (Tenn.App.1978). A state may reasonably limit the free exercise of religion in such cases. 16 C.J.S., Constitutional Law § 206(2), p. 1031.

■ Our Constitution guarantees Americans more personal freedom than enjoyed by any other civilized society, but there are times when the freedom of the individual must yield. Where a child is *dying with cancer and experiencing pain* which will surely become more excruciating as the disease progresses, as in Pamela's circumstance, we believe, is one of those times when humane considerations and life-saving attempts outweigh unlimited practices of religious beliefs. We, therefore, designate the Director of the Offices of Human Services in Knoxville or his successor in said office to act for and on behalf of Pamela in consenting to necessary treatment, which treatment shall be at the direction and under the supervision of St. Jude Children's Research Hospital and its staff. The Director will accede to and respect the wishes of the parents regarding Pamela to the extent that the treatment recommended by the physicians is not interfered with or impaired.

The cause is remanded to the Trial Court with costs of the appeal assessed to appellants.

Due to the immediate need for treatment, the mandate of this Court shall not be stayed pending further appeals.

PARROTT, P.J., and GODDARD and FRANKS, JJ., concur.