Argued and submitted November 6, 1989, affirmed January 17, 1990

In the Matter of Scott, Tianna,
A Minor Child.

STATE ex rel JUVENILE DEPT. OF
MULTNOMAH COUNTY et al,
*Respondents,*

*v.*

SCOTT,
*Appellant.*

(88,674; CA A51134)

785 P2d 779

Connie L. Isgro, Portland, filed the brief for appellant.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

### ROSSMAN, J.

Mother appeals an order terminating her parental rights to her daughter, arguing that social service agencies did not make reasonable efforts to enable her to care for her child through supervised mutual foster care placement. We review *de novo*, ORS 419.561(4), and affirm.

Mother suffers from mental retardation and schizophrenia. She receives services through the Multnomah County Mentally Retarded Developmentally Delayed program (MRDD) and lives in adult foster care. Her daughter was born January 20, 1986. During the daughter's first five months of life, she lived with mother under a mutual foster care plan developed by MRDD. After a disagreement between MRDD and Children's Services Division (CSD) regarding which agency was responsible for managing mother and child, mutual care was assumed by one of mother's previous foster care providers. MRDD then developed a foster care plan with a third individual, Moaning, who eventually complained to the agencies that mother was unable to care for the child in Moaning's home.[1] In February, 1987, after a petition regarding those concerns was filed, the child was separated from mother and placed in CSD foster care.

Mother assigns as error the trial court's finding that, despite reasonable efforts by social agencies, she has been unable to make a lasting adjustment in her conduct or condition sufficient to enable her to integrate the child into her home.[2] According to mother, she has made every effort to

---

[1] CSD's removal of the child followed Moaning's report that she believed that mother had physically abused the child, causing a bruise on her head.

[2] *Former* ORS 419.523(2) provided for termination of parental rights

"if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable in the foreseeable future due to conduct or conditions not likely to change. In determining such conduct and conditions, the court shall consider but is not limited to the following:

"(a) Emotional illness, mental illness or mental deficiency of the parent of such duration as to render it impossible to care for the child for extended periods of time.

"* * * * *

"(e) Lack of effort of the parent to adjust the circumstances of the parent, conduct, or conditions to make the return of the child possible or failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected."

become an adequate parent, willingly participating in parenting classes, early intervention classes for her daughter and a parent support group and meeting with some success. She asserts that previous attempts at mutual foster care placement did not fail because of her condition. Rather, they failed because the agencies gave the foster care provider insufficient training regarding her mental condition and its impact on her ability to care for the child and because no effort was made to find a foster care placement that would meet her family's special needs. Given the agencies' failure to create a properly designed program and the importance of the biological lifelines between mother and child, she argues, she and her daughter should be given another opportunity to live together in mutual foster care placement.

The state argues that this case is controlled by *State ex rel Juv. Dept. v. Farrell,* 55 Or App 897, 640 P2d 652, *reversed and remanded on other grounds* 292 Or 822, 642 P2d 1167, *aff'd* 58 Or App 258, 648 P2d 401, *rev den* 293 Or 521 (1982), *cert den* 460 US 1087 (1983). In *Farrell,* a mother whose parental rights had been terminated argued that, with the right type of assistance, she could become an adequate parent. We disagreed, noting that her limited intellectual capacity and psychological makeup made it extremely unlikely that she could improve her parenting skills to the degree necessary to become a minimally adequate parent. We stated:

> "ORS 419.523(2)(e) implies an obligation on the state to provide assistance through social agencies to reintegrate children into the home. However, that obligation does not require the state to provide continual assistance in the nature of surrogate parenting to assure minimally adequate care for the children. It appears that mother will be unable to put into practice the basic skills necessary to care for the children. The welfare of the children in mother's home should not depend on the availability of agency assistance to the degree that would be necessary for adequate care." 55 Or App at 900.

Mother's case differs in that she candidly admits that she cannot care for her child alone, and she does not contend that additional assistance from social service agencies will enable her to do so. Rather, she argues that, given an appropriate placement by the agencies, the child could receive adequate care while remaining with her. Despite that factual

difference, however, the court's observations in *Farrell* apply with equal force to mother's situation.[3]

What mother asks, in effect, is that the state provide permanent full-time surrogate parenting for her child through mutual foster care. As we noted in *Farrell*, the state has no obligation to do that. Even if it did, furthermore, such an arrangement would not be in the best interests of the child. We have recognized that stability is essential to a child's healthy development. *See Ellenwood and Ellenwood*, 20 Or App 486, 532 P2d 259 (1975). By its nature, foster care is impermanent.[4] There simply is no guarantee that the type of care required by mother and daughter is now or will be available continuously for the next 15 years of the child's life. Although we can sympathize with mother's plight, the child's interests dictate that she not be placed at risk of being moved from foster home to foster home indefinitely.

■ As the state acknowledges, mother's case is tragic. However, there is clear and convincing evidence that she is unable, even with the aid of social agencies, to care properly for the child. Under the circumstances, her interest in and dedication to being a parent does not outweigh the child's interest in being free from the likelihood of harm in the home.

Affirmed.

---

[3] It is undisputed that, despite receiving extensive social services, including two mutual foster care placements, she has been unable to provide adequate care for her daughter. Although witnesses for mother asserted that she had made some progress, others concluded that, despite a great deal of assistance, her growth in parenting skills has been negligible. A clinical psychologist testified that mother's mental illness and background as an abuse victim made future attempts at mutual foster care placement unlikely to succeed. Thus, the previous failures in placement appear to be the result of mother's own limitations, rather than a lack of reasonable efforts by social agencies.

[4] CSD's administrative rules recognize that foster care is not a substitute for permanent placement. *See* OAR 412-75-190.