IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 1, 2017

## IN RE COLTON B.

**Appeal from the Juvenile Court for Overton County**
**No. 16-JV-122    Diana F. Monroe, Judge**

_____

### No. M2017-00997-COA-R3-PT

_____

Mother appeals the termination of her parental rights. Because the trial court failed to provide a rationale for its decision and the final order entered by the trial court is nearly a verbatim recitation of the termination petition, we vacate the order of the trial court and remand for the entry of an order that reflects that it is the product of the trial court's individualized decision-making and independent judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C, J., and ANDY D. BENNETT, J., joined.

William A. Camerson, Cookeville, Tennessee, for the appellant, Miranda B.

Herbert H. Slatery, III, Attorney General and Reporter; W. Derek Green, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

### OPINION

### Background

In July 2015, the child was born to Respondent/Appellant Miranda B. H. ("Mother").[1] The child's birth was premature and he was in severe distress following the birth. Drug tests performed on the child tested positive for morphine, buprenorphine,[2]

_____

[1] In termination of parental rights cases, it is this Court's policy to remove the full names of children and other parties to protect their identities.

[2] Buprenorphine is "a . . . mood-elevating drug used to treat some types of depression[.]"*Mosby's*

meperidine,[3] opioids, and benzodiazepines.[4] As a result, the Petitioner/Appellee Tennessee Department of Children's Services ("DCS") received a referral that the child was drug exposed. During the initial investigation, Mother admitted that prior to her pregnancy she was a habitual drug user, that she had not sought prenatal care during her pregnancy, and that she "shot up morphine" the day before the child's birth.

The child remained in the hospital for a period of thirty days, receiving treatment for respiratory distress, meconium aspiration, and possible HIV status. The child also experienced symptoms consistent with drug withdrawal. As such, the child was administered morphine to ease his withdrawal symptoms.

While the child remained in the hospital, Mother was arrested for violating probation. Based upon these facts, DCS determined that it was in the child's best interest to be removed from Mother's care. When the child left the hospital, he was immediately placed in the care of a foster home, where he remained at the time of trial.

While the child was in the hospital, DCS filed a petition to declare the child dependent and neglected in juvenile court. Eventually, on April 5, 2016, the juvenile court entered a single order following the adjudicatory and dispositional hearings. In this order, the juvenile court found the child to be dependent and neglected and the victim of severe abuse. On December 15, 2016, DCS filed a petition to terminate Mother's parental rights on grounds of (1) substantial non-compliance with permanency plans; (2) persistence of conditions; (3) failure to manifest an ability and willingness to assume custody; and (4) severe abuse.[5] The petition further alleged that it was in the child's best interest for Mother's parental rights to be terminated. Mother filed an answer to the petition on February 22, 2017, denying that grounds existed to terminate her parental rights or that termination was in the child's best interest.

A trial was held on April 18, 2017. Five witnesses testified, including Mother, Foster Mother, and two DCS workers. DCS also entered several exhibits, including the deposition testimony of the detective who investigated Mother's alleged child abuse and the child's treating physician while hospitalized. At the conclusion of the hearing, the trial court orally found clear and convincing evidence to support all of the grounds alleged and that termination was in the child's best interest. The trial court entered an order on April 19, 2017, likewise finding that all of the grounds alleged in the petition

_Dictionary of Medicine, Nursing, & Health Professions_ 258 (9th ed 2013). Buprenorphine may also be used "to treat opioid dependence." **_Id._**

[3] Merperidine is "an opioid analgesic." _Mosby's Dictionary,_ at 1123.

[4] A benzodiazepine derivative is "one of a group of psychotropic agents, including [] tranquilizers . . . prescribed to alleviate anxiety." _Mosby's Dictionary,_ at 196.

[5] The child's father is unknown and was not a party to the termination petition either in the trial court or in this appeal.

had been shown by clear and convincing evidence and that termination of Mother's parental rights was in the child's best interest. From this order, Mother now appeals.

**Standard of Review**

As explained by the Tennessee Supreme Court:

> A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female child*, 896 S.W.2d 546, 547–48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578–79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as parens patriae has a special duty to protect minors . . . .' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d 507, 522–23 (Tenn. 2016) (footnote omitted).

Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Consequently, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. As opined by the Tennessee Supreme Court:

> The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de

novo with no presumption of correctness. ***In re M.L.P.***, 281 S.W.3d [387,] 393 [(Tenn. Ct. App. 2009)] (quoting ***In re Adoption of A.M.H.***, 215 S.W.3d [793], 810 [(Tenn. 2007)]). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. ***In re Angela E.***, 303 S.W.3d at 246.

***In re Carrington H.***, 2016 WL 819593, at \*12.

## Discussion

Mother raises several issues on appeal, arguing that the trial court erred in finding any grounds for termination of her parental rights and that the child's best interest is not served by termination.[6] As an initial matter, however, we must discuss the state of the trial court's order. It is well-settled that the trial court must make "specific findings of fact and conclusions of law" when entering an order in a termination of parental rights proceeding. *See* Tenn. Code Ann. §36-1-113(k) ("The court shall enter an order that makes specific findings of fact and conclusions of law[.]"); *see also* Tenn. R. Civ. P. 52.01 ("In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment.").

The trial court speaks through its written order, not through the transcript. *See* ***Green v. Moore***, 101 S.W.3d 415, 420 (Tenn. 2003). As such, this Court typically does not measure the appropriateness of a written order by whether it is identical to the trial court's oral ruling. In ***Smith v. UHS of Lakeside***, 439 S.W.3d 303 (Tenn. 2014), however, the Tennessee Supreme Court held that the trial court's judgment, in the context of granting or denying a motion for summary judgment, must be "adequately explained and [] the product of the trial court's independent judgment[,]" whether through an order prepared by the trial court or an oral ruling later memorialized by a party-prepared order. ***Id.*** at 314. In ***Smith***, the trial court orally granted summary judgment without providing any basis for its decision, directing counsel for one party to draft the trial court's order and provide the "rationale for the [c]ourt's ruling." ***Id.*** at 317. The Tennessee Supreme Court held that the trial court had abrogated its "high judicial function" to provide the basis for its ruling and that the basis provided by the party-prepared order would not be imputed to the trial court. ***Id.*** at 317–18. In reaching this result, the ***Smith*** court relied on cases involving not only summary judgment, but also concerning bench trials and other

---

[6] DCS also asserts that this Court lacks jurisdiction to consider this appeal because a timely notice of appeal was not filed in accordance with Tennessee Code Annotated section 36-1-124(d). Specifically, DCS asserts that section 36-1-124(d) requires that the litigant-appellant, rather than merely his or her counsel, sign a notice of appeal. In ***In re Bentley D.***, --- S.W.3d ---, No. E2016-02299-SC-RDO-PT, 2017 WL 5623577 (Tenn. Nov. 22, 2017), however, the Tennessee Supreme Court held that the ambiguous language of Tennessee Code Annotated section 36-1-124(d) should not be read to require the personal signature of the litigant-appellant. The notice of appeal filed in this case was therefore sufficient.

- 4 -

types of hearings. *See id.* at 316–17 (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990) (involving the dismissal of a complaint); *Aiken Cty. v. BSP Div. of Envirotech Corp.*, 866 F.2d 661, 677 (4th Cir. 1989) (involving a bench trial); *Clady v. Los Angeles Cty.*, 770 F.2d 1421, 1427 (9th Cir. 1985) (same); *State v. King*, 432 S.W.3d 316, 321 (Tenn. 2014) (involving a sentencing hearing); *Madden Phillips Const., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 810 (Tenn. Ct. App. 2009) (involving a bench trial); *Airline Const. Inc. v. Barr*, 807 S.W.2d 247, 254 (Tenn. Ct. App. 1990) (same)). Indeed, the court held that prior courts "have declined to accept **findings**, **conclusions**, or orders when the record provides no insight into the trial court's decision-making process, . . . or when the record 'casts doubt' on whether the trial court 'conducted its own independent review, or that the opinion is the product of its own judgment[.]'" *Smith*, 439 S.W.3d at 316 (quoting *Bright v. Westmoreland Cty.*, 380 F.3d 729, 732 (3d Cir. 2004)) (emphasis added). Thus, it appears that the holding in *Smith* is equally applicable in other cases where trial courts are required to make findings of fact and conclusions of law, such as following bench trials in termination proceedings. *C.f. Bridgeforth v. Jones*, No. M2013-01500-COA-R3-CV, 2015 WL 336376, at *6 (Tenn. Ct. App. Jan. 26, 2015) (indicating the trial court's responsibility is greater when required to make findings of fact and conclusions of law following a bench trial than when ruling on a motion for summary judgment).

Indeed, in at least one case, this Court has applied the holding in *Smith* in a termination of parental rights case. *See In re Matthew T.*, No. M2015-00486-COA-R3-PT, 2016 WL 1621076, at *5–6 (Tenn. Ct. App. Apr. 20, 2016). In *Matthew T.*, the appealing parent argued that the trial court's written order was not sufficient because it did not exactly match the trial court's oral ruling and had been prepared by counsel for DCS. *Id.* at *5. Citing *Smith*, we noted that while judge-prepared orders are preferable, party-prepared orders are permitted when two conditions are met: (1) "'the findings and conclusions must accurately reflect the decision of the trial court'"; and (2) "'the record must not create doubt that the decision represents the trial court's own deliberations and decision.'" *Id.* (quoting *Smith*, 439 S.W.3d at 316). Ultimately, we noted that the touchstone of this inquiry is "'the fairness and independence of the trial court's judgment.'" *Matthew T.*, 2016 WL 1621076, at *5 (quoting *Smith*, 439 S.W.3d at 316). In *Matthew T.*, the trial court reviewed the petition prior to making its oral ruling and made oral findings that several of the grounds alleged in the petition had been proven by clear and convincing evidence. *Matthew T.*, 2016 WL 1621076, at *6. Finally, we noted that the differences between the trial court's oral ruling and written order were "minor and no basis for reversal." *Id.* As such, we concluded that the trial court complied with its statutory duties.

Unfortunately, the same is not true in this case. Here, following the conclusion of the trial, the entirety of the trial court's oral ruling proceeded as follows:

THE COURT: It is the finding of this court by clear and convincing evidence that the grounds for termination of the parental rights of [Mother] in th[is] matter . . . , I find that the evidence is there for the parental rights to be terminated. I further find that the termination of the parental rights of [Mother] in th[is] matter . . . , I find that the termination of her rights are in the best interest of the child. Anything else?

[Attorney for Mother]: No, Your Honor.

[Attorney for DCS]: Your Honor, if you could specify as to which grounds? The state has alleged four grounds. Are you finding that all four grounds have been proven by clear and convincing evidence?

COURT: Yes.

[Attorney for DCS]: And are you finding that the state's witnesses are credible in what's been heard today?

COURT: Yes.

[Attorney for DCS]: Do you find the testimony as to the mother is not credible?

COURT: Yes. Anything else?

[Attorney for Mother]: No, Your Honor, thank you.

COURT: Thank you all, very much.

The following day, the trial court entered a fifteen page order detailing the four grounds for termination and facts supporting each ground and citing the applicable factors in determining the child's best interest as well as facts supporting each factor.

From our review, the trial court's oral ruling and written order have far more than "minor" differences, given that the trial court's oral ruling contains no factual findings whatsoever. *See Matthew T.*, 2016 WL 1621076, at \*6; *see also In re K.N.R.*, No. M2003-01301-COA-R3-PT, 2003 WL 22999427, at \*4 (Tenn. Ct. App. Dec. 23, 2003) (noting that a recitation that a ground has been proven is a conclusion of law rather than a finding of fact). Instead, in the face of the trial court's skeletal oral ruling, it appears that DCS was required to draft an order providing the "rationale" for the trial court's ruling, much like in *Smith*.[7] *See Smith*, 439 S.W.3d at 317; *see also Delevan-Delta Corp. v. Roberts*, 611 S.W.2d 51, 53 (Tenn. 1981) ("[I]t is improper for the trial court to require counsel to prepare findings[.]") (cited with approval in *Smith*).

The trial court's written order, however, does not alleviate our concerns. *C.f. In re B.L.R.*, No. W2004-02636-COA-R3-PT, 2005 WL 1842502, at \*11 (Tenn. Ct. App. Aug. 4, 2005) ("[W]hen this Court undertakes a review of a parental termination case, we are concerned with whether the trial court's final written order, not its oral statements to the

---

[7] In its oral ruling, the trial court does not expressly direct counsel for DCS to prepare the final order in this case, unlike in *Smith*. The circumstances surrounding the order, however, including the fact that it was approved for entry by DCS's counsel, entered the day following the termination hearing, and tracks the language of DCS's termination petition, discussed in detail, *infra*, leads this Court to conclude that the order was most likely drafted by counsel for DCS.

parties, satisfies the statute.") (decided prior to **Smith**). Rather, after a thorough review of the order, it appears that the final judgment is virtually identical to DCS's termination petition. Indeed, of the sixty factual allegations contained in DCS's termination petition, fifty-three appear to have been both identically numbered and recited in the final order.[8] Only the introductions and conclusions of the two documents contain any material differences.[9] Our conclusion that the final order was largely lifted from DCS's petition is buttressed by the fact that the final order contains not a single mention of any of the proof presented at the termination hearing, such as the testimony of the witnesses or the depositions submitted as exhibits.[10] In **Smith**, the Tennessee Supreme Court cited favorably a federal case that took issue with the practice of trial courts adopting briefs prepared by parties. *See **DiLeo v. Ernst & Young***, 901 F.2d 624, 626 (7th Cir. 1990). Therein, the United States Court of Appeals for the Seventh Circuit stated:

> A district judge could not photocopy a lawyer's brief and issue it as an opinion. Briefs are argumentative, partisan submissions. Judges should evaluate briefs and produce a neutral conclusion, not repeat an advocate's oratory. From time to time district judges extract portions of briefs and use them as the basis of opinions. We have disapproved this practice because it disguises the judge's reasons and portrays the court as an advocate's tool, even when the judge adds some words of his own. . . . Judicial adoption of an entire brief is worse. It withholds information about what arguments, in particular, the court found persuasive, and why it rejected contrary views. Unvarnished incorporation of a brief is a practice we hope to see no more.

*Id.* at 626 (7th Cir. 1990) (citations omitted). While the language at issue in this case was taken from DCS's termination petition rather than a pre-trial brief, we find the discussion by the Seventh Circuit helpful in this case, especially given the gravity of termination of parental rights cases. *See **In re Jaylah W.***, 486 S.W.3d 537, 546 (Tenn. Ct. App. 2015), *perm. app. denied* (Tenn. 2016) (noting that because of the gravity of the consequences of termination of parental rights proceedings, specific procedures must be followed). Given the nearly identical recitation of facts contained in the petition and the final order, coupled with the trial court's sparse oral ruling, we must conclude that the record "casts doubt" as to whether the trial court exercised its independent judgment in this case.

---

[8] The remaining seven allegations are identical in the final order but renumbered.

[9] Of the sixty allegations of fact or proposed conclusions of law in the petition, however numbered, only four are not identical to the final order. The differences are not in any way material but rather change allegations to findings and/or conclusions. For example, the petition contains the following proposed conclusion: "41. Therefore, [DCS] avers that the parental rights of [Mother] should be terminated pursuant to Tenn. Code Ann. § 36-1-113(g)(3)." The final order provides: "41. Therefore, the parental rights of [Mother] should be terminated pursuant to Tenn. Code Ann. § 36-1-113(g)(3)."

[10] The final order does recite the requirements of the permanency plans at issue in this case. Of course, these recitations are identical to the recitations contained in the termination petition.

***Smith***, 439 S.W.3d at 316. Thus, like the Tennessee Supreme Court in ***Smith***, we decline to impute the rationale provided by the final written order to the trial court. As noted by our supreme court, the duty to make decisions is a "high judicial function" requiring judges to use their own independent judgment to resolve the parties' disputes, rather than delegating this task to parties. ***Id.*** at 313.

In ***Smith***, the Tennessee Supreme Court determined that the appropriate remedy for the trial court's failure to provide the rationale for its ruling was to remand to the trial court for reconsideration. *See **Smith***, 439 S.W.3d at 316. Likewise, this Court has held that the proper remedy when the trial court fails to make specific findings of fact and conclusions of law in a termination proceeding is to vacate the judgment and remand for further proceedings. *See **In re Audrey S.***, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005) (citing ***In re D.L.B.***, 118 S.W.3d 360, 367 (Tenn. 2003)). We understand the hardship that may result to two families as a result of delaying a final decision in this matter. Because of the heightened protections afforded in termination of parental rights cases and the concomitant need for "individualized decision making", ***Audrey S.***, 182 S.W.3d at 861, however, we cannot excuse the trial court from its obligation to render a decision that is "the product of the trial court's independent judgment." ***Smith***, 439 S.W.3d at 315. Here, the record causes this Court grave concern and substantial doubt as to whether the trial court properly preformed its high judicial function. ***Id.*** at 313. As such, we must vacate and remand with instructions for the trial court to enter an order that is the product of its own judgment.

**Conclusion**

The judgment of the Overton County Juvenile Court is vacated and this cause is remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellee the Tennessee Department of Children's Services, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE